UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-223 (NEB/DTS)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | **GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANTS' PRETRIAL MOTIONS** |
| AIMEE MARIE BOCK, ET AL., | |
| Defendants. | |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, Joseph H. Thompson, Harry M. Jacobs, Matthew S. Ebert, and Chelsea A. Walcker, Assistant United States Attorneys, respectfully submits the following consolidated response to defendants' pretrial motions.

I. **MOTION TO DEFINE THE SCOPE OF THE PROSECUTION TEAM AND REQUIRE DISCLOSURES (DKT. # 190)**

Defendant Abdulkadir Nur Salah has filed additional briefing in support of his claim that the Minnesota Department of Education (MDE) conducted a joint investigation into Feeding Our Future and sites under its sponsorship, including sites run by the defendants. This is simply not true. The Court has already found that MDE was not part of the criminal investigation or prosecution team in a related case arising out of this same investigation. Since that time, this related case proceeded to trial, during which an MDE witness testified that she and her colleagues were not

part of the government's criminal investigation and did not conduct their own investigation into the suspected fraud.

### A. The Legal Standard

The Court has already set forth the legal standard defining the scope of the government's discovery obligations in a related matter:

> Whether the prosecution has a duty to conduct a Brady review of materials in the possession of another government agency depends on a fact-intensive inquiry into the extent to which the agencies conducted a joint investigation." *United States v. Gilbertson*, No. 17-cr-0066(1) (PJS/HB), 2018 WL 1905805, at *2 (D. Minn. Apr. 23, 2018); *accord Tavlin*, 2023 WL 3477610, at *3; *see, e.g.*, *United States v. Middendorf*, No. 18-CR-36 (JPO), 2018 WL 3956494, at *4 (S.D. N.Y. Aug. 17, 2018); *United States v. Connolly*, No. 1:16-cr-00370 (CM), 2017 WL 945934, at *6, 7 (S.D. N.Y. Mar. 2, 2017); *United States v. Gupta*, 848 F. Supp. 2d 491, 493 (S.D. N.Y. 2012); *see also, e.g.*, *United States v. Tournant*, No. 22-CR-276-LTS, 2023 WL 5001186, at *3 (S.D. N.Y. Aug. 4, 2023); *United States v. Alexandre*, No. 22 Cr. 326 (JPC), 2023 WL 416405, at *5 (S.D. N.Y. Jan. 26, 2023); *United States v. Avenatti*, No. 19-CR-374 (JMF), 2022 WL CASE 0:22-cr-00124-NEB-DTS Doc. 317 Filed 12/19/23 Page 24 of 59 25 457315, at *10 (S.D. N.Y. Feb. 15, 2022); *United States v. Bases*, 549 F. Supp. 3d 822, 825 (N.D. Ill. 2021); *United States v. Bourassa*, No. 4:18-cr-3-MLB, 2020 WL 7778038, at *2 (N.D. Ga. Dec. 31, 2020); *United States v. Tyson*, No. 1:18CR708, 2020 WL 255533, at *1 (N.D. Ohio Jan. 16, 2020); *United States v. Ferguson*, 478 F. Supp. 2d 220, 238 (D. Conn. 2007); *cf. United States v. Risha*, 445 F.3d 298, 301-02 (3d Cir. 2006); United States v. Antone, 603 F.2d 566, 570 (5th Cir. 1979); *United States v. Blaszczak*, 308 F. Supp. 3d 736, 741-42 (S.D. N.Y. 2018). "To determine whether a joint investigation has occurred, courts engage in a case-by-case analysis of the extent of interaction and cooperation between the . . . governmental agencies." *Tavlin*, 2023 WL 3477610, at *3 (quotation omitted); see Antone, 603 F.2d at 570; *Bases*, 549 F. Supp. 3d at 826. "A primary factor is the nature of cooperation, such as coordinating witness interviews and investigating the facts of the case." *Tavlin*, 2023 WL 3477610, at *3; *see Bases*, 549 F. Supp. 3d at 826; *Middendorf*, 2018 WL 3956494, at *4. Other factors include whether the other agency: (1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings. *Middendorf*, 2018 WL 3956494, at *4; *accord Tavlin*, 2023 WL 3477610, at *3; *see also, e.g.*, *Risha*, 445 F.3d at 304 (questions to consider include "(1) whether the party with knowledge of the information is acting on the government's 'behalf' or is under

its 'control'; (2) the extent to which state and federal governments are part of a 'team,' are participating in a 'joint investigation' or are sharing resources; and (3) whether the entity charged with constructive possession has 'ready access' to the evidence")."The mere fact the Government may have requested and received documents from another agency in the course of its investigation does not convert the investigation into a joint one." *Ferguson*, 478 F. Supp. 2d at 239 (quotation omitted); *see, e.g.*, *United States v. Blondet*, No. 16-cr-387 (JMF), 2022 WL 549707, at *1 (S.D. N.Y. Feb. 23, 2022) ("[T]he mere fact that a government entity responds to targeted document requests does not, without more, make that entity part of the prosecution team."); *see also, e.g.*, *Tournant*, 2023 WL 5001186, at *8; *Tavlin*, 2023 WL 3477610, at *4; *Alexandre*, 2023 WL 416405, at *7; *Bourassa*, 2020 WL 7778038, at *3; *United States v. Finnerty*, 411 F. Supp. 2d 428, 433 (S.D. N.Y. 2006). "Instead, the key to the analysis is the level of involvement between the United States Attorney's Office and the other agencies." *Ferguson*, 478 F. Supp. 2d at 239 (quotation omitted); *see Bourassa*, 2020 WL 7778038, at *2 ("courts ask whether the state officials essentially functioned as agents of the federal government under the principles of agency law" (quotation omitted)).

*United States v. Abdiaziz Farah et al.*, No. 22 CR 124 (NEB/DTS), Dkt. #317 at *24-26 (Dec. 19, 2023).

## B. The Court's Previously Found That MDE Was Not Part of the Prosecution Team

The Court has already found that MDE was not part of the prosecution team for purposes of discovery. *United States v. Abdiaziz Farah, et al.*, No. 24 CR 124, Dkt. #317 at *32 (Dec. 19, 2023) (finding that "there was no joint investigation between and among federal law enforcement (the United States Attorney's Office for the District of Minnesota/Government, FBI, IRS, and USPIS) and the other federal and state agencies"); *see also* Dkt. #343 at 6 (adopting Report and Recommendation and finding that MDE was not part of the criminal investigation or prosecution).

Since that time, the first of the related cases has proceeded to trial. An MDE employee, Emily Honer, testified at trial. During her testimony, Ms. Honer explained that she and her colleagues at MDE had concerns about the massive increase in the

3

number of sites being opened by sites under the sponsorship of Feeding Our Future. Ms. Honer and her team took efforts to control the fraudulent claims, including by notifying Feeding Our Future and other sponsors that for-profits restaurants such as Safari Restaurant, could not participate in the program in October 2020, after which Feeding Our Future filed a lawsuit accusing MDE of racism and discrimination for failing to approve these sites. Ms. Honer testified that MDE later stopped all payments to sites under the sponsorship of Feeding Our Future, but that a state court judge ordered them to resume payments until they could show Feeding Our Future and the sites under its sponsorship were committing fraud. Mr. Honer explained that she and her colleagues were not criminal investigators and did not have investigative authority. As a result, MDE resumed payments to Feeding Our Future while referring the matter to the FBI.[1]

Under cross examination, defense counsel questioned Ms. Honer about her relationship with the FBI agents and prosecutors involved in the criminal investigation. She testified that she was not part of the investigative team. She explained that she produced documents to the FBI pursuant to subpoenas and that she had been interviewed several times during the criminal investigation. No one from MDE was present for this or any other interviews conducted during the criminal investigation.

---

[1]    Ms. Honer's testimony was recounted in contemporary press reports. *See, e.g.*, https://www.startribune.com/minnesota-education-department-official-testifies-in-feeding-our-future-trial-about-fraud-concerns/600362863/?refresh=true (last accessed on June 28, 2024).

When the government reached out to Ms. Honer about her potential trial testimony, MDE said it would not allow the government to conduct witness preparation sessions with Ms. Honer without the presence of attorneys from MDE and/or the Minnesota Attorney General's Office to represent the interests of MDE, which they viewed as not entirely aligned with those of the U.S. Attorney's Office. The U.S. Attorney's Office objected to the presence of attorneys from MDE or the Attorney General's office. The witness preparation session only proceeded after Ms. Honer retained her own private counsel, through whom the government scheduled witness preparation without the presence of MDE or the AG's Office attorneys.

As the Court previously found, MDE played no role in the criminal investigation. They were not involved in any of the witness interviews. They did not review any of the documents obtained during the investigation. They were not involved in the investigation or prosecution strategy. And they have not accompanied the government to any of the court proceedings. For all of these reasons, the Court correctly concluded that MDE was not part of the prosecution team in this investigation.

**C.   The Government Did Not Commit Grand Jury Misconduct**

As an alternative argument, Salah argues that the government committed grand jury misconduct by continuing to issue grand jury subpoenas, and receiving documents pursuant to grand jury subpoenas, in the ongoing investigation. He cites a number of documents obtained from MDE in anticipation of trial in *United States v. Abdiaziz Farah et al.*, 24 CR 124 (NEB/DTS) and argues that they were obtained

after the indictment was returned and after the conclusion of the grand jury investigation.

He is incorrect. The government's investigation into the ongoing Feeding Our Future scheme is ongoing. In the first six months of 2024, the government has charged ten individuals in three separate cases. *See United States v. Said Ereg, et al.*, 24 CR 13 (NEB/DTS); *United States v. Ikram Mohamed, et al.*, 24 CR 15 (NEB/DTS); and *United States v. Hoda Abdi*, 24 CR 24 (NEB/DTS). The grand jury investigation remains active and the government expects to charge additional individuals. Moreover, the grand jury investigation into Salah and his co-defendants remains active. The government is investigating additional charges in this case, including potential aggravated identity theft charges insofar as Salah and his co-defendants used the names of real children in support of their fraudulent claims.

The documents cited by defendant Salah have nothing to do with Salah or his co-defendants. They relate to claims submitted by the defendants in in *United States v. Abdiaziz Farah et al.*, 24 CR 124 (NEB/DTS) and were obtained in anticipation of that trial.

## II. MOTION FOR BILL OF PARTICULARS OR TO DISMISS THE INDICTMENT (DKT. ## 207, 217, 221)

Defendants Ahmed Abdullahi Ghedi, Abdi Nur Salah, and Abdirahman Mohamud Ahmed have moved for a bill of particulars, and in the case of Ghedi and Ahmed, to dismiss the indictment. After the motions hearing, the Court ordered the government to submit supplemental briefing regarding whether the indictment was legally sufficient as to the mens rea elements in certain charges. Because the

6

indictment adequately informs the defendants of the charges against them and tracks the statutory language as to each element, the indictment is legally sufficient and the defendants' motions should be denied.

Salah, Ghedi, and Ahmed claim that the indictment is facially defective because it does not sufficiently allege the mens rea of the counts. The defendants misconstrue the pleading requirements. Because the indictment fairly and adequately apprises each of the defendants of the mens rea for each count, their motion should be denied.

An indictment is "legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to subsequent prosecution." *United States v. Wessels*, 12 F. 3d 746, 750 (8th Cir. 1993) (*citing United States v. Young*, 618 F.2d 1281, 1286 (8th Cir. 1980)). An indictment is sufficient "unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense" with which the defendant is charged. *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008). As a general matter, an indictment will be held sufficient if it tracks the language of the charging statute. *Id.*

Here, the indictment in this case tracks the language of the charging statutes. In doing so, the indictment informs the defendants of the nature of the charges against them and provides them with the opportunity to prepare a defense at trial. With respect to the wire fraud counts, the indictment charges that the defendants

"did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts." (Dkt. #1 ¶144.) For the money laundering counts, the indictment alleges that the defendants "knowingly engaged and attempted to engage in monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, as describe[d] below, such property having been derived from specified unlawful activities . . . ." (Dkt. #1 ¶ 199.) The indictment therefore gives sufficient notice of the charged offenses and adequately alleges each of the charged counts. *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir. 2005) ("An indictment need not use specific words, so long as by fair implication it alleges the charged offense.").

The defendants suggest that the indictment must go far beyond what is legally required and "reveal evidence" in the charging instrument to support the well-pleaded elements of the charges. This is exactly what is *not* required in an indictment—that is saved for trial, when the government will marshal its evidence to support the allegations in the indictment and offer proof as to each element.

Moreover, the defendants suggestions that a bill of particulars is appropriate here is misplaced. The purpose of a bill of particulars is to inform a defendant of the nature of the charges against him and to prevent or minimize the element of surprise at trial. *United States v. Beasley*, 688 F.3d 523, 532 (8th Cir. 2012). A bill of particulars is not intended to provide a defendant with evidentiary detail or discovery

regarding the defendant's case. *United States v. Hester*, 917 F.2d 1083, 1084 (8th Cir. 1990). Rather, it is required only when necessary to inform a defendant of the charges against him with sufficient clarity to enable him to prepare his defense, to minimize the element of surprise at trial, and to protect himself against a second prosecution for an inadequately described offense. *Wessels*, 12 F. 3d at 750. That is not the case here when the government has laid out its allegations in detail through a 58-page indictment.

### III.  CONCLUSION

The government respectfully requests that the Court deny the defendants' pretrial motions for the reasons described above and in the government's consolidated response to the defendants' motions (Dkt. #255).

Date: June 28, 2024                                      Respectfully Submitted,

                                                         ANDREW M. LUGER
                                                         United States Attorney


                                                   BY:  /s/ *Joseph H. Thompson*
                                                         JOSEPH H. THOMPSON
                                                         HARRY M. JACOBS
                                                         MATTHEW S. EBERT
                                                         CHELSEA A. WALCKER
                                                         Assistant U.S. Attorneys

9