UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-223 (NEB/DTS)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | **GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS COUNTS 15-40 BASED ON *SNYDER V. UNITED STATES*** |
| AIMEE MARIE BOCK, et al., | |
| Defendants. | |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, Joseph H. Thompson, Harry M. Jacobs, Matthew S. Ebert, and Daniel W. Bobier, Assistant U.S. Attorneys, respectfully submits the following consolidated response to defendants' motion to dismiss Counts 15-40 based on the Supreme Court's recent decision in *Snyder v. United States*. Dkt. ##327, 331, 337, 341.

I. **BACKGROUND**

The defendants are charged with carrying out a massive fraudulent scheme to obtain and dole out hundreds of millions of dollars in federal child nutrition program funds. The scheme was carried out by individuals who worked at Feeding Our Future, a company that sponsored participation in the federal child nutrition program, along with entities that participated in the program under the sponsorship of Feeding Our Future. The indictment alleges that as Executive Director of Feeding Our Future, defendant Aimee Bock oversaw a massive scheme to defraud carried out by sites under its sponsorship. Bock and her company recruited individuals and entities to

1

open up more than 200 federal child nutrition program sites throughout the state of Minnesota. The sites fraudulently claimed to be serving meals to thousands of children a day within just days or weeks of being formed and despite having few, if any, staff and little to no experience serving this volume of meals. Dkt. #1 at ¶24.

The indictment further alleges that in support of these fraudulent claims, the conspirators created and submitted fake documentation to cover up their fraud, including fraudulent meal count sheets purporting to document the number of children and meals served at each site, fake invoices purporting to document their purchase of food to be served at the sites, and fake attendance rosters purporting to list the name and age of each child that received a meal each day. Dkt. #1 at ¶¶26-27.

The indictment alleges that "[d]espite knowing the claims were fraudulent, BOCK and Feeding Our Future submitted her co-conspirators' fraudulent claims to MDE and then disbursed the fraudulently obtained Federal Child Nutrition Program funds to the individuals and entities involved in the scheme." Dkt. #1 at ¶28.

The indictment further alleges that Bock and other Feeding Our Future employees "solicited and received bribes and kickbacks from individuals and companies sponsored by Feeding Our Future." Dkt. #1 at ¶31. The indictment expressly alleges that "Feeding Our Future operated a pay-to-play scheme, where individuals seeking to operate fraudulent sites under the sponsorship of Feeding Our Future had to kickback a portion of their fraudulent proceeds to Feeding Our Future employees." *Id.*

Based on the above, a grand jury returned a 61-count indictment charging the defendants with a variety of crimes, including conspiracy to commit federal programs bribery, in violation of 18, U.S.C. §§ 371 and 666, and federal programs bribery, in violation of 18, U.S.C. § 666.

## II. DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE INDICTMENT ALLEGES THEY PAID BRIBES AND KICKBACKS TO FEEDING OUR FUTURE EMPLOYEES IN EXCHANGE FOR ITS SPONSORSHIP OF THEIR FRAUDULENT PARTICIPATION IN THE FEDERAL CHILD NUTRITION PROGRAM

Defendants Aimee Bock and Abdulkadir Salah have moved to dismiss the conspiracy to commit federal programs bribery and federal programs bribery counts based on the Supreme Court's recent decision in *Snyder v. United States*, 144 S.Ct. 1947 (2024).[1]

Section 666 prohibits corrupt payments to agents of federally funded entities made to "influence or reward" those agents in connection with government business. 18 U.S.C. § 666. In *Snyder*, the Supreme Court held that 18 U.S.C. § 666 reaches only *quid pro quo* bribery agreed to before a public official's action and does not criminalize gratuities—payments made as a reward or token of appreciation for official action, typically after the fact.

In *Snyder*, the former mayor of Portage, Indiana, was convicted under Section 666 for accepting $13,000 from a trucking company after having steered city contracts

---

[1] Defendants Salim Said, Abdihakim Ahmed, and Abdinasir Abshir filed motions to join in the motions to dismiss with respect to the bribery counts they are facing. Dkt. ##337-38, 341. As the government noted during a recent status conference, defendant Ahmed Artan's inclusion in the Count 15 conspiracy to commit federal programs bribery charge was the result of a scrivener's error. The government intends to file a motion to dismiss that count with respect to defendant Artan.

to that company during his mayoralty. Snyder challenged his conviction on the theory that Section 666 covers only quid pro quo bribes, not gratuities, and argued that the jury should have been instructed accordingly. Whereas a *quid pro quo* bribe requires an upfront agreement to act in exchange for the bribe, a gratuity is a typically backward-looking payment to reward action already taken.

The Court agreed that Section 666 does not prohibit gratuities. The Court reiterated, however, that the statute prohibits the solicitation, receipt, or payment of bribes for a future official act even where the bribe is paid after the official act so long as the agreement to solicit, receive, or pay bribes occurred before the official action. *Snyder*, 144 S.Ct. at 1959.

The fact that a payment or benefit was received after an official action does not automatically render that payment a gratuity. Rather, a payment postdating the action still constitutes a bribe if it was made in satisfaction of an agreement reached before the action. The critical inquiry following *Snyder* is not when (or even how) a payment was made—*e.g.*, each time a favorable action was undertaken, just once for a series of desired actions, or several times for a single action—but why the payment was made: *i.e.*, whether it was made in satisfaction of some implicit or explicit agreement to secure some official action.[2]

---

[2] As several courts of appeals have recognized, the government does not need to match a quid to every quo in order to establish a *quid pro quo* bribery scheme in violation of Section 666. *See, e.g.*, *United States v. Roberson*, 998 F.3d 1237, 1245 (11th Cir. 2021) ("The 'retainer,' 'as opportunities arise,' or 'stream of benefits' theory of bribery[] occurs when a person bribes an individual or entity in exchange for a continuing course of conduct.")*.United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998) ("[T]he intended exchange in bribery can be 'this for these' or 'these for these,' not just 'this for that.'"); *United States v. Martínez*, 994 F.3d 1, 7 (1st Cir. 2021) ("[B]ased on what is known as a 'stream of benefits' theory, . . . the

Here, the indictment alleges that the defendants engaged in a classic, *quid pro quo* bribery and kickback scheme. The indictment alleges that "Feeding Our Future operated a pay-to-play system, where individuals seeking to operate fraudulent sites under the sponsorship of Feeding Our Future had to kickback a portion of their fraudulent proceeds to Feeding Our Future employees." Dkt. #1 at ¶31.[3] The indictment alleges further that many of the bribes and kickbacks were "disguised as consulting payments or other legitimate payments to shell companies created by Feeding Our Future employees." *Id.* at ¶149c. The indictment then alleges an ongoing stream of bribe and kickback payments from defendants Abdulkadir Salah, Salim Said, Abdihakim Ahmed, Abdikadir Mohamud, and others to Bock and other Feeding Our Future employees and shell companies under their control. *Id.* at ¶¶151-53, 155-56, 159-78, 180.

The fact that defendants kicked backed a portion of their fraudulent proceeds to Feeding Our Future employees after they received them from the Minnesota Department of Education does not turn this into a gratuities case. As *Snyder* recognized, a defendant may not "defend against the bribery charge by saying that the payment was received only after the official act and therefore could not have 'influenced' the act" where the government can prove—including through

---

government may 'prove an agreement for the ongoing stream of benefits rather than . . . for stand-alone bribes' and so is not required to 'link the value of the government business conferred to any particular benefit received by the official.'").

[3] Although this paragraph appears in the allegations related to the wire fraud conspiracy, it was incorporated by reference into Counts 15 through 40. Dkt. #1 at ¶¶146, 179.

5

circumstantial evidence and reasonable inference—that the after-the-fact payment was made in satisfaction of a preexisting agreement. *Snyder*, 144 S. Ct. at 1959; *see also United States v. Friedman*, 854 F.2d 535, 554 (2d Cir. 1988) ("[E]vidence of a corrupt agreement in bribery cases is usually circumstantial, because bribes are seldom accompanied by written contracts, receipts or public declarations of intentions."); *United States v. Wright*, 665 F.3d 560, 569 (3d Cir. 2012) ("Parties to a bribery scheme rarely reduce their intent to words, but the law does not require that."). At trial, the government expects to present testimony that individuals agreed to kick back a portion of their fraudulently obtained federal child nutrition program funds to Feeding Our Future employees in exchange for their sponsorship of their fraudulent claims and participation in the federal child nutrition program.

Finally, defendant Bock moves to dismiss the bribery counts against her on the grounds that the $310,000 payment she received from defendants Abdulkadir Salah was for the sale of a childcare center Bock operated. Dkt. #327. Perhaps recognizing the childcare licenses cannot be bought and sold, she specifies that the payment was for the childcare center's "inventory" and "goodwill such as training and licensing assistance." *Id.* at 2, n.2. Setting aside the absurdity of this claim, it is not grounds for a motion to dismiss. A pretrial motion to dismiss an indictment is not a vehicle for assessing the strength or sufficiency of the government's evidence. *United States v. Ferro*, 252 F.3d 964, 967-68 (8th Cir. 2001). If Bock wants to raise this a defense, the proper time to do so is at trial.

## III. CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss Counts 15-40 should be denied.

Date: October 7, 2024                            Respectfully submitted,

                                                      ANDREW M. LUGER
                                                     United States Attorney

BY:  /s/ *Joseph H. Thompson*
      JOSEPH H. THOMPSON
      HARRY M. JACOBS
      MATTHEW S. EBERT
      DANIEL W. BOBIER
      Assistant U.S. Attorneys