# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 22-CR-223(4)(NEB/DTS) |
| Plaintiff, | |
| v. | **DEFENDANT'S TRIAL BRIEF** |
| 4. ABDULKADIR NUR SALAH, | |
| Defendant. | |

Defendant identifies the following issues for the Court's attention at or in advance of the pretrial conference.

## I. The Court Should Give a *Ciminelli* Jury Instruction and Caution the United States Not to Seek a Conviction on a "Right-to-Control" Theory.

In *United States v. Ciminelli*, the Supreme Court conclusively rejected the oft-used "right-to-control" theory of mail and wire fraud and confirmed that to prove these offenses, "the Government must prove not only that wire fraud defendants 'engaged in deception,' but also that money or property was 'an object of their fraud.'" 598 U.S. 306, 312 (2023). No longer can the government pursue wire fraud on the idea that effectively any form of deceptive conduct "denies the victim the right to control its assets by depriving it of information necessary to make discretionary economic decisions." *Id.* Indeed, even the United States through the Solicitor General's office committed itself in *Ciminelli* to the proposition that "if the right to make informed decisions about the disposition of one's assets, without more, were treated as the sort of 'property' giving rise

to wire fraud, it would risk expanding the federal fraud statutes beyond property fraud as defined at common law and as Congress would have understood it." *Id.* at 315.

The Court rejected the entire body of "right-to-control" case law "[b]ecause the theory treats mere information as the protected interest" meaning that "almost any deceptive act could be criminal." *Id.* at 316. The theory "criminalizes traditionally civil matters and federalizes traditionally state matters." *Id.* at 316.

*Ciminelli's* total abrogation of the "right-to-control" theory will have a significant impact in the Eighth Circuit, which adopted the theory in *United States v. Shyres*, 898 F.2d 647, 653 (8th Cir. 1990). In *Shyres*, the Eighth Circuit held that defendants could be found guilty of wire fraud even if they only caused their employer (Anheuser-Busch) to pay legitimate invoices and the employer received the benefit of the bargain. *Id.* at 649-653. The *Shyres* defendants concealed from Anheuser-Busch that they had awarded marketing contracts to a firm in exchange for kickbacks. *Id.* at 650. The defendants appealed their mail fraud conviction claiming that one of the marketing contracts they awarded was legitimate, and that their employer received the full benefit of its bargain. *Id.* The Eighth Circuit held that even if the employer lost no money because it paid a legitimate invoice for marketing expenses and received the benefit of its bargain, the defendants were guilty because they deprived Anheuser-Busch of the right to control its spending and who it chose to pay money to. *Id.* at 652-653.

Similarly, in *United States v. Ruzicka*, the Eighth Circuit rejected a defendant's argument that he could not be convicted of wire fraud if the victim received the full benefit of its bargain, in part based on *Shyres*. 988 F.3d 997, 1009 (8th Cir. 2021). The

2

defendant argued that even if he deceived his victim "into a transaction that it otherwise would not have entered" he at worst deprived the victim of the "right-to-control" its property. *Id.* at 1009. Ruzicka relied on a Second Circuit case, *United States v. Binday*, which held that *even where the right to control theory applied*, a defendant could still not be convicted of wire fraud where the victim received the full benefit of its bargain. *Id.* at 1009 (citing *Binday*, 804 F.3d 558, 570 (2d Cir. 2015).) The *Ruzicka* Court rejected the defendant's reliance on *Binday*. *Id.*

Thus, with the right-to-control theory now conclusively abrogated by the Supreme Court in *Ciminelli*, the United States must prove that the putative victim in this case—the United States Department of Agriculture ("USDA")—was actually deprived of money, and not just that it was deceived by the submission of false information (such as alleged false names on attendance rosters, or marginally incorrect meal count submissions). The government cannot obtain a wire fraud conviction if the USDA was deceived but nevertheless paid the same amount of money for meals as it otherwise would have paid had the meals been provided by different food distribution sites (other than the Defendants' sites). Similarly, the United States cannot prove a wire fraud by proving mere deceit regarding the identities of the individuals who picked up meals, if it cannot prove beyond a reasonable doubt that any number of meals was not actually distributed to a person who claimed eligibility (even if the recipient's claim of eligibility was false).

The prosecution cannot prove wire fraud unless it can prove that the USDA paid out money due to a scheme to defraud that it otherwise would not have paid, or at minimum that the alleged scheme was targeted to achieve that outcome. Proving a

3

scheme to deceive the USDA that was not aimed at causing any pecuniary loss, but perhaps merely at diverting USDA expenditures from one distribution method to another, would be insufficient to prove wire fraud under *Ciminelli*.  In short, if the USDA received the full benefit of the bargain it expected in contracting with the Minnesota Department of Education to distribute food to people who claimed eligibility, the Defendants cannot be guilty of a wire fraud even if the government could prove that any documents submitted for sites connected to the Defendants were false.

Accordingly, the Court should adopt the *Ciminelli* jury instruction proposed by the Defendants and caution the United States not to argue that the jury can convict the defendants of wire fraud based on any version of a "right-to-control" theory.

**II.     Rule of Completeness Additions to Government Exhibits.**

The defense received copies of the United States' voluminous exhibits on Monday, January 10.  The government's exhibits include over 100 emails and other communications.  Defendant Abdulkadir Salah is reviewing the exhibits and identifying their context as quickly as possible, but reserves his right to request that these exhibits be supplemented under the Rule of Completeness, Federal Rule of Evidence 106.  The defense has not yet had sufficient time to locate all potential contextual communications that may need to be admitted pursuant to Rule 106.

The recently amended Rule of Completeness has been significantly expanded to read: "If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part — or any other statement — that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay

4

objection." Fed. R. Evid. 106. Most significantly, the Rule expressly states that the addition to the statement cannot be excluded on hearsay grounds. *See United States v. Roberts,* 86 F.4th 1183, 1189 (8th Cir. 2023) (noting that the amended Rule 106 will change the Eighth Circuit's prior precedent that the Rule does not allow the admission of unrelated hearsay.)

The defense will communicate with the prosecution regarding any emails or communications that, in fairness, must be admitted at the same time as any government exhibit. To the extent the parties dispute the admission of any Rule of Completeness additions, the parties may need to raise such disputes with the Court before or during trial.

### III. Discovery Issues.

Based on its continuing review of the government's exhibit list, the defense has identified deficiencies in the United States' Rule 16 disclosures. Specifically, the defense identified that the United States has not produced the entirety of the search warrant returns it received from Google prior to filing the Indictment, as required by Rule 16(a)(1)(B) and (E).

Of particular importance is the account attribution and access time details that Google routinely provides as part of its search warrant return package. Based on the defense's review, these materials have not been produced for almost 50 different Google accounts.

To its credit, the United States is communicating with the defense about these deficiencies. To date however, the United States has not agreed to produce all of the

missing records. Rather, the prosecution's last communication on this issue requested that the Defense identify which particular records were needed by specific account name.

But the defense should not be required to identify all the deficiencies in the United States' Rule 16 production, and it should not need to disclose defense strategy by picking and choosing the accounts for which the prosecution needs to produce full search warrant records.

The defense expects that the government will ultimately comply with its obligations and produce all the missing materials consistent with Rule 16. However, if the production is not made expeditiously, the defense will raise this issue at the pretrial conference with the Court.

Dated: January 10, 2025    **GREENE ESPEL PLLP**

*s/ Surya Saxena*
Surya Saxena, Reg. No. 0339465
Nicholas Scheiner, Reg. No. 0402470
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
ssaxena@greeneespel.com
nscheiner@greeneespel.com
(612) 373-0830

Attorneys for Defendant Abdulkadir Nur Salah