IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>4. ABDULKADIR NUR SALAH,<br><br>Defendant. | Case No. 22-CR-223(4)(NEB/DTS)<br><br><br>**MOTION *IN LIMINE* NO. 2 TO PRECLUDE INTRODUCTION OF IMMIGRATION AND TAX RECORDS** |

Defendant Abdulkadir Salah requests an order precluding the government from introducing certain immigration and tax records—which are both irrelevant and unduly prejudicial—as Rule 404(b) "other acts" evidence at trial in this case.

The government's Rule 404(b) disclosure identifies two types of documents that the government may seek introduce against Defendant Salah as "other acts" evidence under Rule 404(b). First, the government may offer certain documents relating to Defendant Salah's immigration status. These include a December 2021 Application for Cancellation of Removal filed by Defendant Salah's attorney on his behalf, which lists Defendant Salah's "salary" as a Partner with Cosmopolitan Business Solutions d/b/a Safari Restaurant ("Cosmopolitan") as $0.[1] The government claims that this representation was false. Second, the government may offer tax documents relating to

---

[1] The government's exhibit list includes other immigration-related records under the heading "Abdulkadir Nur Salah Immigration Review Documents, Tax Records, and (sic)," but the government's Rule 404(b) disclosure does not reference them at all, much less explain their purported relevance. The government should be precluded from introducing those records for all the reasons explained in this Motion.

Cosmopolitan, of which Defendant Salah was co-owner with two other individuals. The government claims that certain IRS Form 1099s issued by Cosmopolitan included false Taxpayer Identification Numbers (TINs).

I.     **The Government's Rule 404(b) Notice is Deficient.**

As an initial matter, the government's disclosure does not articulate the purpose for which it may seek to introduce these records. Instead, the government simply contends that they are "admissible as evidence of, among other things, knowledge, opportunity, preparation, intent, plan, and absence of mistake or accident," invoking the language of Rule 404(b). This disclosure is inadequate, and the government should be precluded from introducing these records on that basis alone. *See United States v. Cotton*, 823 F.3d 430, 434 (8th Cir. 2016) (government "must identify the permissible non-propensity purpose for the evidence, and must articulate the relationship between the [evidence] and a material issue in the case" and may not "[m]ere[ly] recit[e] the Rule without an accompanying case-specific analysis"); Rule 404(b)(3) ("the prosecutor must: (A) provide reasonable notice…so that the defendant has a fair opportunity to meet it; [and] (B) *articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose*[.]") (emphasis added).

Here, the government does not attempt to explain the specific permissible purpose of this alleged other bad acts evidence. It is too late now for the United States to be given another opportunity to try to remedy that deficiency. The records should therefore be excluded.

## II.      Legal Standard Under Rule 404(b).

Even if the Court does not exclude these records based on the deficient notice, evidence is admissible pursuant to Rule 404(b) only if "it (1) is relevant to a material issue, (2) is similar in kind and close in time to the crime charged, (3) is proven by a preponderance of the evidence, and (4) does not have a prejudicial effect that substantially outweighs the probative value." *United States v. Ali*, 616 F.3d 745, 752–53 (8th Cir. 2010).

Both the immigration records and the tax records fail this test because the government cannot demonstrate that Defendant Salah committed misconduct with regard to either. Moreover, any attempt to show such misconduct would be both far more prejudicial (and confusing) than probative. Therefore, the Court should exclude this evidence under Rules 403 and 404(b).[2]

## III.     Evidence of Defendant Salah's Immigration Status Should Be Excluded.

The Court should preclude the government from introducing Defendant Salah's immigration documents because they would permit the government to inappropriately place his nationality and immigration status before the jury. The resulting risk of undue prejudice substantially outweighs any minimal probative value that the records may have. Fed. R. Evid. 403; *Ali*, 616 F.3d at 753.

---

[2] "In cases in which a defendant argues that both rules prohibit the admission of certain evidence, there is no practical difference whether we analyze the Rule 403 claim separately or instead as a subpart of Rule 404(b)," and the defendant preserves his claim under both rules. *United States v. Maxwell*, 643 F.3d 1096, 1102 (8th Cir. 2011).

Defendant Salah's December 2021 Application for Cancellation of Removal discloses that he is from Somalia, that he entered the United States without documents or inspection, and that he is not a United States citizen. Evidence of Defendant Salah's immigration status is entirely irrelevant to the charges against him, and "might invite jurors to decide that [he] is guilty on the improper basis of his alienage or national origin" in violation of Rule 403. *United States v. Limon-Urenda*, No. 13-cr-4067, 2014 WL 11322259, at *2 (N.D. Iowa Feb. 13, 2014). Because Defendant Salah's immigration status has no probative value whatsoever, "any reference to [his] immigration status would be substantially more prejudicial than probative under Rule 403." *Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927, 939 (8th Cir. 2013); *see also United States v. Almeida-Perez*, 549 F.3d 1162, 1174 (8th Cir. 2008) (documents indicating a violation of immigration laws "introduce the possibility of invidious discrimination on the basis of alienage").[3]

The obvious risk that jurors presented with Defendant Salah's immigration records will improperly vote to convict him based on his status as an immigrant far outweighs any minimal probative value of statements in those records about Defendant Salah's

---

[3] Other courts have routinely reached the same conclusion. *See, e.g., United States v. Amaya-Manzanares*, 377 F.3d 39, 45 (1st Cir. 2004) (evidence of immigration status "introduces a factor into the case that might encourage the jury to dislike or disapprove of the defendant independent of the merits"); *United States v. Ceja-Rangel*, 688 F. App'x 203, 208 (4th Cir. 2017) ("Generally, the Government should refrain from referring to a defendant's immigration status when it is of limited probative value."); *United States v. Diaz*, 494 F.3d 221, 226 (1st Cir. 2007) ("We accept the notion, as does the government, that evidence of a defendant's illegal immigration status carries with it the potential for prejudice.").

income. Those statements are irrelevant to the elements of the charges against Defendant Salah. The government may argue that those statements, although not directly relevant, relate to Salah's knowledge, consciousness of guilt, or absence of mistake—that because Salah knew that any income from Safari was fraudulent, he sought to conceal it from the government by not disclosing it on immigration forms. But this potential argument relies on an extended logical chain that falls apart at a cursory review of the records.

First, the cancellation of removal application was not filled out by Salah himself but instead was prepared and signed by an attorney. The Government has no information about what Salah provided—and was asked to provide—to the attorney. Nor does the government have any method to attempt to establish Salah's involvement in submitting the form, because all such information is privileged. Accordingly, the statements in the application cannot credibly reveal anything about Salah's state of mind in preparing the application.

Second, the cancellation of removal application is complex, as are the immigration removal and adjustment of status proceedings Salah is involved in. The income portion of the application does not indicate that it was filled out incorrectly—much less "fraudulently," as the Government contends. Specifically, the form does not clearly indicate how to declare partnership income—whether as earnings per week from an employer in Question 38 or as assets in Question 40. Indeed, the response to Question 40 stated that Salah had $404,000 in assets from "[s]hares in company owned." Therefore, even if the Government could attribute the statements to Salah, it has no grounds to draw an inference that Salah's statements were made with a nefarious intent—as opposed to a

5

general mistake on a complex form. Indeed, it has not been established whether any mistake was made at all, and the attorney's involvement in filling out the form suggests that it was done properly.

Courts have excluded evidence in similar circumstances for insufficient probative value. For example, in *United States v. Hawley*, the Government, which charged the defendant with a crop fraud scheme in 2000 to 2001, sought to introduce crop insurance forms from 1998 signed by the defendant as proof of "absence of mistake" under Rule 404(b)(2). No. C 06-4087-MWB, 2011 WL 10483390, at *10–11 (N.D. Iowa Oct. 13, 2011). The court excluded the evidence because the Government had "failed to show that Hawley's conduct in 1998 was fraudulent." *Id.* at *11. Moreover, evidence of a separate uncharged scheme would not provide any insight into the defendant's motive but instead "would confuse the issues and unnecessarily delay the trial." *Id.*

The same is true here: the Government has not shown that Defendant Salah's statements on the immigration forms were fraudulent. *See Ali*, 616 F.3d at 753 (requiring "other acts" to be proven by a preponderance of the evidence). Even if the Government were to attempt such a showing, the result would be an unnecessary mini-trial. After all, these are not simple records, and for the jury to be equipped to weigh the records, the Government would have to explain the rules of the forms and explain why Salah had to submit them—issues that are not only complex but also contested.[4] The limited probative

---

[4] Redaction would not cure the problem that the Government faces. To avoid revealing the nature of the immigration records, the forms would have to be heavily redacted. However, for the Government to still draw the inference that it seeks, it would

value of the records is far outweighed by the prejudicial effect of disclosing Salah's immigration status to the jury and the confusion that it would present to the jury.

### IV. Cosmopolitan's Tax Records Should Be Excluded

The Court should also preclude the government from introducing evidence suggesting improprieties with Cosmopolitan's tax records.

To prevent the government from circumventing the prohibition on the use of other acts as evidence of general bad character, these acts must be highly relevant, sufficiently similar, and not unduly prejudicial to be admissible under Rule 404(b)(2).  *See Ali*, 616 F.3d at 752–53.  These are not hollow requirements.  For example, in the tax-evasion case *United States v. Reiss*, the court prohibited the government from presenting evidence that the defendant's tax returns were not timely filed because it was "relevant only to show that Reiss engaged in other misconduct with the Internal Revenue Service, thereby showing that Reiss has a propensity to disregard tax law"—the precise proof of "character" barred by Rule 404.  No. 04-cr-156, 2005 WL 2337917, at *3 (D. Minn. June 9, 2005).  Moreover, the evidence about "late filing of tax returns differs substantially from the alleged assistance in preparing fraudulent tax returns," and the prejudicial effect was severe, as a "juror may infer that [the defendant] has a propensity to disregard all tax

---

need to explain the consequences to Salah of not filing this form. The combination of a heavily redacted form and the Government's explanations would either hopelessly confuse the jury or lead it to the same improper assumptions. *Cf. Andrade v. Walgreens-Optioncare, Inc.*, 784 F. Supp. 2d 533, 537 (E.D. Pa. 2011) (prohibiting questions about plaintiff's social security number because "the suggestion that he does not have a social security number[] exposes [plaintiff] to the risk that the jury might leap to a conclusion about his immigration status, leading to the same risk of unfair prejudice").

law." *Id.* In short, even in a tax-evasion case, Rule 404 requires tax records to be closely tied to the conduct at issue to be admissible.

The government's proposed use of Cosmopolitan's tax records is even more far afield than the proposed use in *Reiss*. The propriety of Cosmopolitan's 1099 process for contractor payments is not at issue in the charges against Defendant Salah, and failing to file or prepare proper tax forms is not substantially similar to the charged allegations of fraud. *See Reiss*, 2005 WL 2337917, at *3; *see also United States v. Cadet*, 2009 WL 2959606, at *2 (E.D.N.Y. Sept. 11, 2009 (refusing to find that failing to file personal taxes was substantially similar to filing false information on behalf of others).

To the extent that the Government seeks to introduce the tax records as evidence of Defendant Salah's knowledge of the alleged fraud scheme, the government has failed to provide evidence "to find that the subsequent scheme occurred." *United States v. Thomas*, 791 F.3d 889, 894 (8th Cir. 2015).

The government appears to claim that TINs were intentionally misstated on 1099s issued to other entities so that the IRS could not find out that money was paid to those entities. The government at base cannot demonstrate that these misstatements were purposeful. And even if it could show a general scheme to evade taxes, there is no evidence that Defendant Salah was aware of this scheme. Only one of the entities listed in the Rule 404 notice was owned by Salah—and that entity was jointly owned. Any alleged evaded tax liability would not even necessarily flow to Defendant Salah, as opposed to one of his co-owners. There is no evidence that any false TINs on 1099s benefited a solely owned entity of Defendant Salah's. In short, the government has no

8

evidence of Defendant Salah's "knowledge of the [alleged] sham" tax returns. *Hawley*, 2011 WL 10483390, at *10.

Without evidence of either the alleged scheme occurring, or Salah being involved in it, the prejudicial effect of introducing the tax returns is significant. For one, determining if the tax identification numbers were purposely misstated would spark another mini-trial, unnecessarily confusing the issues for the jury. For another, the mere insinuation of impropriety by the government in tax law—which is notoriously complex—may lead a juror to infer that the defendant is "generally a cheater," in violation of Rule 404. *Cadet*, 2009 WL 2959606, at *2. This concern is acute here: if the government shows that the scheme exists, it would impugn Defendant Salah for being a joint ownership of Cosmopolitan—even without providing any evidence that Defendant Salah was specifically involved in the scheme. This vilification by association is the precise type of character evidence prohibited by Rule 404.

At trial in this case, the Court should accordingly preclude the Government from offering Defendant Salah's immigration and tax records as Rule 404(b) evidence.

Dated:  January 10, 2025            **GREENE ESPEL PLLP**

*s/ Surya Saxena*
Surya Saxena, Reg. No. 0339465
Nicholas Scheiner, Reg. No. 0402470
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
ssaxena@greeneespel.com
nscheiner@greeneespel.com
(612) 373-0830

Attorneys for Defendant Abdulkadir Nur Salah