IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>v.<br><br>4. ABDULKADIR NUR SALAH,<br><br>                                    Defendant. | Case No. 22-CR-223(4)(NEB/DTS)<br><br><br>**MOTION *IN LIMINE* NO. 3 TO PRECLUDE IMPROPER QUESTIONING** |

Defendant Abdulkadir Nur Salah requests an order pursuant to Federal Rules of Evidence 611, 701, and 704 precluding the government from eliciting improper summary opinion testimony and asking leading questions of its witnesses on direct examination.

**I.      Improper Summary Questioning**

Lay witness testimony must be based on the witness's "personal knowledge of the matter" testified to.  Fed. R. Evid. 602.  Lay witnesses are permitted to offer their opinions only under narrowly prescribed conditions—when those opinions are "rationally based on the witness's perception," are "helpful to clearly understanding the witness's testimony or to determining a fact in issue, and are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.

On multiple occasions during the trial in *United States v. Farah* earlier this year, the government elicited testimony that amounted to improper lay opinion testimony by asking the witness to agree with the questioning attorney's characterizations of the

evidence. One example from the questioning of Emily Honer, a Business Operations and Support Services Supervisor with the Minnesota Department of Education:

> *Farah* Tr. Vol. VI at 1356:15-23
> Q. Winfield Townhomes in Savage, Minnesota?
> A. Yes, with 500 breakfasts and lunches.
> Q. And Woodbridge Apartments in Owatonna.
> A. Yes, with 500 breakfasts and lunches.
> Q. Seems like a lot.
> A. That does seem like a lot.
> MR. SCHLEICHER: Objection, Your Honor.
> THE COURT: Sustained. I'll strike that from the
> record. The jury will disregard.

Another example, from the government's questioning of FBI Forensic Accountant Paoline Roase:

> *Farah* Tr. Vol. XX at 4800:17-4801:2
> Q. And what's the total number of meals for which the
> defendants claimed reimbursements --
> A. So --
> Q. -- from April 2020 to December of 2021.
> A. Well, it goes into February of '22 a little bit as well,
> but it's 18,835,517 meals.
> Q. A lot of meals.
> A. Yes.
> MR. SCHLEICHER: Objection, Your Honor. Leading
> and argumentative.
> THE COURT: Sustained. It will be disregarded.

And a third example, also from Roase:

> *Farah* Tr. Vol. XXI at 5113:10-20
> Q. What were you looking for when you looked into entities
> that received money from these companies?
> A. I was looking -- I was looking for food purchases.
> Q. And what did you find?
> A. Not enough food purchases.
> MR. MOHRING: Objection. Foundation.
> THE COURT: Sustained.
> Did you say "not enough"?

      THE WITNESS: Not enough.
      THE COURT: All right. Sustained. The jury will disregard.

Testimony that there were "a lot of meals" claimed or that a certain number of meals claimed "does seem like a lot" is not factual testimony based on the witness's "personal knowledge," it is an improper characterization—code for "too many"—that essentially tells the jury what result the witness thinks they should reach. *See, e.g., United States v. Manlove*, 755 F. App'x 630, 633 (9th Cir. 2018) ("leading questions going to essential elements of a cause of action are particularly dangerous because there 'is a serious risk that the witness ... will simply follow the attorney's lead rather than attempting to give the most accurate testimony'") (citing Edward J. Imwinkelreid, *Evidentiary Foundations* 3 (1986)). This infringes the jury's role as factfinder and undermines the defendant's right to a fair trial. And while curative instructions may be helpful and necessary after the fact, it is in all parties' interest that the record remain free of this kind of improper testimony in the first place. The Court should issue an order precluding the government from eliciting this sort of testimony.

**II.  Leading Questions**

Defendant Salah also requests that the Court instruct the government to refrain from asking leading questions of witnesses on direct examination. "Leading questions should not be used on direct examination except as necessary to develop the witness's testimony." Fed. R. Evid. 611; *see also United States v. Anderson*, 446 F.3d 870, 876 (8th Cir. 2006) (same). During the *Farah* trial, the Court repeatedly sustained objections

made by the defendants' attorneys to leading questions asked of government witnesses on direct examination. Illustrative examples include:

> *Farah* **Tr. Vol. VI at 1277:17-20**
> Q. Because all these kids that get free and reduced school lunch suddenly weren't going to be able to?
> MR. GOETZ: Objection, leading, Your Honor.
> THE COURT: Sustained.
>
> *Farah* **Tr. Vol. XII 2836:5-11**
> Q. How did you help them out?
> A. I helped them submit fake meal count, fake invoices, help them get -- tell them what area to -- to use for the site for their application.
> Q. Look the other way?
> MR. COTTER: Objection. Leading.
> THE COURT: Sustained.
>
> *Farah* **Tr. Vol. XII at 2843:22-2844:9**
> Q. Why can you submit whatever number you want to claim for a high-traffic site?
> A. The high-traffic site, you can say -- you can exaggerate the number.
> Q. Why?
> A. Because it's high traffic. You exaggerate the number, you will say that you submitted -- that you served a lot of meal count.
> Q. Nobody knows the difference?
> MR. GOETZ: Objection. Leading, Your Honor.
> THE WITNESS: No, no one can tell the difference.
> THE COURT: Sustained. The answer will be stricken.
>
> *Farah* **Tr. Vol. XII at 2875:24-2876:7**
> Q. And what were they actually doing?
> A. They never -- they never served.
> Q. Did they ever visit?
> A. No.
> Q. Part of the VIP treatment?
> A. Yes.
> MR. GOETZ: Objection. Leading, Your Honor.
> THE COURT: Sustained. The answer will be

stricken. The jury will disregard.

*Farah* Tr. Vol. XVI at 3935:23-3936:7
Q. A lot of money?
A. A lot of money.
Q. And they spent a lot of time talking about their
different cuts and how to split it up?
A. Correct.
Q. Fair to say they spent more time talking about that than
about feeding kids?
MR. SCHLEICHER: Objection, Your Honor.
Argumentative and leading.
THE COURT: Sustained.

*Farah* Tr. Vol. XVII at 4079:14-4083:4
Q. You said supplies issues. What do you mean by that?
A. Well, like supplies to run the market, so -- or the -- I
guess the restaurant side of it, so whether that be, hey,
barbecue sauce, out of barbecue sauce, or, you know, just
specific type of food items or other items that the cuisine
and market would have been running low on or out of.
Q. Okay. That doesn't seem super similar to what we saw
when you looked at Abdi -- the text between Abdiaziz Farah
and Mahad Ibrahim and also Abdiaziz Farah and --
MR. SCHLEICHER: Objection. Leading,
argumentative.
. . .
[*Sidebar discussion*]
. . .
THE COURT: The objection to the last question is
sustained. Rephrase, please.

*Farah* Tr. Vol. XX at 4755:12-4756:3
A. I guess it -- I wouldn't expect $30 million to be
flowing through a restaurant, you know, you know, situated
where it is.
MR. COTTER: Objection, Your Honor. Speculation,
lack of foundation.
THE COURT: Overruled.
You may answer.
THE WITNESS: Yeah, I mean, just where -- just
where it's located and the size of it, I just don't see how
$30 million could flow through in, I think it was roughly a

5

year and a half.
BY MR. THOMPSON:
Q. Directing your attention back to Government Exhibit A-1, that doesn't look like a $30-million-a-year operation to you?
MR. COTTER: Objection. Leading.
THE COURT: Sustained.

In many of these instances, the witnesses answered the improper leading questions too quickly for the Court to instruct them not to do so. And in some instances, the questions themselves amounted to testimony or argument by the attorneys, because the questions comprised statements by the attorneys which the witnesses were simply being asked to confirm. While jurors are presumed to heed the Court's instructions to disregard testimony in response to improper questions, the risk that such questions will prejudice the defendants' rights can only be fully avoided if those questions are not asked in the first place. Further, the more routine it becomes for a prosecutor to lead and suggest answers, the less likely that the jury is able to identify that such questioning is improper and follow the Court's repeated orders to strike and sustained objections.

The Court should issue an order instructing the government to refrain from asking leading questions of its witnesses on direct examination.

Dated:  January 10, 2025				**GREENE ESPEL PLLP**

<u>*s/ Surya Saxena*</u>
Surya Saxena, Reg. No. 0339465
Nicholas Scheiner, Reg. No. 0402470
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
ssaxena@greeneespel.com
nscheiner@greeneespel.com
(612) 373-0830

Attorneys for Defendant Abdulkadir Nur Salah