IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>4. ABDULKADIR NUR SALAH,<br><br>Defendant. | Case No. 22-CR-223(4)(NEB/DTS)<br><br><br>**MOTION *IN LIMINE* NO. 5 TO PRECLUDE IMPROPER EXPERT AND LAY OPINION TESTIMONY** |

Defendant Abdulkadir Nur Salah requests an order (1) precluding expert testimony from case agents and law enforcement officers unless such testimony is first qualified under FRE 702 and bifurcated from percipient witness testimony from the same witness; and (2) precluding improper lay opinion testimony from case agents and law enforcement officers.

**I.      Undifferentiated Expert Testimony**

The government has disclosed one potential expert witness, Mark Danielson ("Danielson"), who is a Supervisory Forensic Accountant at the FBI. Despite including Danielson in an expert disclosure, the government states that it "does not agree that the testimony of this witness is covered by" Rule 702, suggesting that Danielson may also offer lay testimony based on his personal knowledge and role in the investigation in this case. Danielson apparently also participated in the execution of search warrants in this case and may have engaged in other hands-on investigative tasks as part of the government's investigation.

The government's expert disclosure explained it anticipates Danielson will testify regarding a number of broad topics that might arguably involve specialized knowledge including, for example, the "three stages of money laundering"; the "varying methods of money laundering"; the difference between "shell", "shelf", and "front companies" and how they are used in money laundering schemes; and criminals' use of "[p]urchases of high-value assets, such as real estate," to engage in money laundering.[1]  The government's expert disclosure makes clear that it intends to dress up basic banking concepts (e.g., deposits and withdrawals) into the highly charged language of money laundering (shell, shelf, and front companies) without applying any articulable methodology, specialized knowledge, or expertise to the facts of this case.

The government's lengthy witness list also discloses two proposed "summary witnesses," who will likely be called on to give pre-closing arguments for the government in the form of lay opinion testimony.  These case agents, who the government will request not be sequestered during trial, will likely be asked to conform their testimony to the evidence that they have heard, and provide opinions designed to bolster the United States's theories.  The government did so in the trial in *United States v. Farah*, asking FBI Forensic Accountant Paoline Roase, who had not been qualified as an expert, "Q. Ms. Roase, what were those five companies used for?" to which Roase offered the

---

[1] For purposes of addressing this issue, Defendant Salah presumes that the government does not intend to offer both lay and expert testimony from any other witnesses.  Should the government seek to do so, which Defendant Salah would oppose, and should the Court permit it, the same principles discussed herein should apply to any such witnesses.

improper opinion that, "A. They were used to launder money." The Court struck Roase's answer. *Farah* Tr. Vol. XXI at 5090:17-24.

The Eighth Circuit has articulated "several risks" with the kind of dual-role testimony that the United States contemplates offering through several witnesses including that:

> (1) the witness's aura of credibility as an expert may inflate the credibility of her perception as a fact witness in the eyes of the jury;
>
> (2) opposing counsel is limited in cross-examining the witness due to the risk that an unsuccessful attempt to impeach her expertise will collaterally bolster the credibility of her fact testimony;
>
> (3) the witness may stray between roles, moving from the application of reliable methodologies into sweeping conclusions, thus violating the strictures of Daubert and Federal Rule of Evidence 702;
>
> (4) jurors may find it difficult to segregate these roles when weighing testimony and assessing the witness's credibility; and
>
> (5) because experts may rely on and disclose hearsay for the purpose of explaining the basis of an expert opinion, there is a risk the witness may relay hearsay when switching to fact testimony.

*United States v. Overton*, 971 F.3d 756, 763 (8th Cir. 2020) (citing *United States v. Moralez*, 808 F.3d 362, 365 (8th Cir. 2015)).

In *Overton*, the Eighth Circuit explained the uniquely acute risk that a dual-role witness will offer improperly founded testimony if putative expert testimony is not clearly differentiated from their lay testimony. In that case, the case agent interpreted both coded slang (expert testimony) as well as "ordinary English words," while also "providing opinions about the conversations that went beyond the words themselves," "in an undifferentiated form." *Id*. at 764-65. The failure to differentiate between opinions

"based on his personal perceptions as an investigator on the case" and those based on "his expert training and experience" left the jury and the court no way to know whether his opinions "were impermissibly based on hearsay statements."

The Eighth Circuit has held that "[i]deally, the lay and expert testimony would be provided by separate witnesses." *Moralez*, 808 F.3d at 366. This case presents a significant risk of unfair prejudice if the government is allowed to repeatedly blur the lines between percipient witness testimony, lay opinion testimony, and quasi-expert testimony as it is apparently planning. Given the significant number of law enforcement officers identified on the United States' witness list, it should have no problem separating lay testimony and putative opinion testimony between separate witnesses. The Court should enter an order requiring the government to do so.

At minimum, the Court "should take appropriate measures to minimize the problems that may arise from dual-role testimony by a case agent." *Id*. In this case, the government should be required to "bifurcate[e] the questioning" of Danielson to separate his expert testimony from any lay testimony and opinion. *Id*.; *see also Overton*, 971 F. 3d at 763. The Court should also provide the jury with "the necessary information to distinguish between the lay and expert testimony" in the form of a jury instruction at the beginning of Danielson's testimony and at the end of the case. *Overton*, 971 F. 3d at 765; *Moralez*, 808 F.3d at 366.

## II.  Exclude Expert Opinion Testimony by Mark Danielson

The Court should also preclude Danielson from offering expert testimony regarding broad money laundering concepts because such overly-complex testimony is

4

unnecessary to aid the trier of fact in understanding the basic banking transactions (e.g., deposits, withdrawals, etc.) at issue in this case. *See United States v. Nunn,* 940 F.2d 1148, 1149 (8th Cir. 1991) (excluding expert testimony where expert's specialized knowledge would not assist the trier of fact in understanding a relevant issue). Danielson will not base his testimony on any specialized analysis, experimentation, or other reliable methodology; rather, he will simply characterize certain straightforward bank transactions as though they are criminal by labeling them as money laundering. None of the transactions at issue in this case are the type of complex or comingled transactions that warrant the aid of a money laundering expert.

The Court should exclude Danielson's testimony entirely, or at the very least be prepared to limit Danielson's opinions to only those that will legitimately aid the trier of fact in understanding demonstrably complex transactions, as opposed to straightforward deposits and withdrawals.

### III.  Improper Lay Opinion Testimony

Moreover, to the extent the government seeks to introduce lay opinion testimony from any non-expert witnesses, the Court should strictly hold the government to the standards in Rule 701. Any lay opinion testimony must be "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and not "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Specifically, government witnesses should be precluded from offering lay opinion testimony that goes to (1)

5

Defendant Salah's state of mind, or (2) the meaning of communications by Defendant Salah or the reasons for actions taken by Defendant Salah.

"When the issue is a party's knowledge, in most instances, lay opinion will not meet the requirements of Rule 701." *United States v. Dashner*, No. 12-cr-00646, 2015 WL 3660331, at *3 (N.D. Cal. June 2, 2015) (citing *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992); *United States v. Hauert*, 40 F.3d 197, 200 (7th Cir. 1994)). That is because "when a witness has fully described what a defendant was in a position to observe, what the defendant was told, and what the defendant said or did, the witness's opinion as to the defendant's knowledge will often not be 'helpful' within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant knew." *Rea*, 958 F.2d at 1216.

Moreover, before offering lay opinion testimony of any defendant's intent, the government must first show that "the witness's testimony is based upon his or her personal observation and recollection of concrete facts . . ., *and* that those facts cannot be described in sufficient detail to adequately convey to the jury the substance of the testimony." *Wactor v. Spartan Transp. Corp.*, 27 F.3d 347, 351 (8th Cir. 1994) (citation omitted; emphasis added). Absent that showing, no witness should be permitted to testify as to Defendant Salah's state of mind. *See, e.g., United States v. Whitworth*, 856 F.2d 1268, 1284 (9th Cir. 1988) (abuse of discretion to permit lay witness to testify about defendant's state of mind on the basis of "common sense") (cleaned up).

Lay law enforcement witnesses offered by the government should similarly not be allowed to testify as to their interpretation of communications by Defendant Salah or the

6

reasons for actions taken by Defendant Salah. In *United States v. Peoples*, 250 F.3d 630, 640 (8th Cir. 2001), the case agent offered lay testimony "about what the defendants were thinking during . . . conversations," that the defendant "went to [the victim's] house to murder [the victim]," about the reason the defendant had requested a loan (to pay a hit man), and "her personal opinions" of what conversations involving the defendant meant. The *Peoples* court explained that "When a law enforcement officer is not qualified as an expert by the court, her testimony is admissible as lay opinion only when the law enforcement officer is a participant in the conversation, has personal knowledge of the facts being related in the conversation, or observed the conversations as they occurred." *Id*. at 641. Applying that standard, admission of the agent's testimony was reversible error because the agent's "opinions were based on her investigation after the fact, not on her perception of the facts." *Id*. at 641.

At trial in this case, government agents called to testify should not be permitted to testify about the meaning of communications by Defendant Salah or the reasons for actions taken by Defendant Salah absent the kind of personal knowledge and observation described in *Peoples*.

Dated: January 10, 2025                     **GREENE ESPEL PLLP**

*s/ Surya Saxena*
Surya Saxena, Reg. No. 0339465
Nicholas Scheiner, Reg. No. 0402470
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
ssaxena@greeneespel.com
nscheiner@greeneespel.com
(612) 373-0830

Attorneys for Defendant Abdulkadir Nur Salah