**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>4. ABDULKADIR NUR SALAH,<br><br>Defendant. | Case No. 22-CR-223(4)(NEB/DTS)<br><br><br>**DEFENDANT'S OPPOSITION TO GOVERNMENT MOTIONS *IN LIMINE*** |

Defendant Abdulkadir Nur Salah opposes the government's motions *in limine* (ECF Nos. 411-418, 434), as detailed below. In most instances, the government's motions are overly broad and vague, seeking relief which, when stated in the government's sweeping terms, would preclude Defendants from exercising their Constitutional right to present a complete defense. Further, many of the government's motions are premature, addressing issues unlikely to arise during trial and that, if they arise, are best ruled on during trial based upon a developed record. For the reasons set forth below, Defendant Salah respectfully requests that the government's motions *in limine* be denied.

## I.    Government Motion *in Limine* to Preclude Improper Defenses

The government moves to preclude any arguments that Defendants can rely on "advice of counsel" and/or "mistake of law" as defenses to their alleged conduct, labeling these defenses as allegedly "improper." The Court should deny the government's motion as explained below.

## A.    Advice of Counsel Defense (ECF No. 411)

The government's request to exclude a potential advice of counsel defense against Defendant Salah should be denied as premature and too vague to grant relief. The government notes that no defendant has identified the intent to raise an advice of counsel defense at this time. Defendant Salah has not indicated that he will advance an advice of counsel defense, and therefore this motion should be denied as premature. A motion *in limine* refers to "any motion, whether made before or during trial, to exclude anticipated *prejudicial evidence* before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) (emphasis added); *see also* "Motion in Limine," Black's Law Dictionary (11th ed. 2019) (defining "motion in limine" as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial"). The government has no reason to file a motion at this time regarding Defendant Salah, and it should be denied.

When a defendant seeks to raise an advice of counsel defense, they "must show that [they]: (i) fully disclosed all material facts to [their] attorney before seeking advice; and (ii) actually relied on [their] counsel's advice in the good faith belief that his conduct was legal." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006); *see also United States v. Broussard*, 589 F. Supp. 3d 1031, 1035–36 (D. Minn. 2022). If met, the defendant is entitled to an instruction on that theory if they establish the evidentiary foundation. *Broussard*, 589 F. Supp. 3d 1031, 1035–36 (D. Minn. 2022) (citing *United States v. Yan Naing*, 820 F.3d 1006, 1011 (8th Cir. 2016)).

The second context of advice of counsel has a broader sense:

> [T]he term arises when a criminal defendant seeks to introduce evidence, or argue to the jury, that the advice or involvement of a lawyer tended to negate his mens rea, even if the defendant could not establish all the elements of the formal defense. For example, a defendant might testify that he negligently, but not intentionally, failed to provide a complete set of facts to the lawyer, or that he received accurate advice but innocently misinterpreted it. That would not qualify for an advice-of-counsel defense in the formal sense; nonetheless, such evidence would surely be admissible on the issue of defendant's state of mind.

*Gorski*, 36 F. Supp. 3d at 268. Here, the government requests a blanket bar when neither instance has been offered or proffered by Defendant Salah. As such, the Court should deny the motion *in limine* as premature. *Broussard*, 589 F. Supp. 3d at 1138 (citing *United States v. Head*, No. 08-cr-116, 2013 WL 5739095, at *4 (E.D. Cal. Oct. 22, 2013) (denying motion in limine because "[t]he court declines to grant this request as too vague and unsupported")).

### B.    Mistake of Law Defense

The government's motion to exclude what it calls "mistake of law" defenses should be denied because the government is actually mischaracterizing valid and pertinent "mistake of fact" defenses.  The United States' entire wire fraud theory is founded on the idea that the Defendants allegedly provided materially false information to the United States under Federal Nutrition Programs with the intent to deprive the USDA out of Federal Nutrition Program funds.  That theory cannot hold water if the Defendants either affirmatively acted in good faith or acted out of a *mistake of fact,* regarding relevant Federal Nutrition Program requirements.

Indeed, the United States agrees that the complex Federal Nutrition Program rules and Covid-19 waivers implemented by the USDA and Minnesota Department of

Education ("MDE") are *issues of fact* in this case. We know this because the United States affirmatively elicited detailed testimony regarding detailed program rules and waivers from a *fact witness*—an employee of MDE—at the *Farah* trial. The program rules and waivers are important pieces of factual evidence in this case as well. The Defendants' *subjective* understanding of the waivers, whether mistaken or accurate, is highly relevant to the Defendants' *mens rea*.

Accordingly, the Supreme Court has held that where there are mixed questions of law and fact underlying the elements of the charged offenses, a Defendant does have a mistake of fact defense regarding the underlying legal principles. In *Rehaif v. United States*, 588 U.S. 225, 232 (2019), the Court confirmed that where an alienage statue requires proof of the defendant's legal status under a statute other than the charging statue, the defendant's "innocent mistake" regarding legal status is a defense to *mens rea*. In rejecting the United State's protestations that such a defense would be akin to stating that "ignorance of the law" is a defense, the *Rehaif* Court explained as follows:

> The Government also argues that whether an alien is "illegally or unlawfully in the United States" is a question of law, not fact, and thus appeals to the well-known maxim that "ignorance of the law" (or a "mistake of law") is no excuse. *Cheek v. United States*, 498 U.S. 192, 199, (1991).
>
> This maxim, however, normally applies where a defendant has the requisite mental state in respect to the elements of the crime but claims to be "unaware of the existence of a statute proscribing his conduct." 1 W. LaFave & A. Scott, Substantive Criminal Law § 5.1(a), p. 575 (1986). *In contrast, the maxim does not normally apply where a defendant "has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct," thereby negating an element of the offense. Ibid.; see also* Model Penal Code § 2.04, at 27 (a mistake of law is a defense if the mistake

negates the "knowledge ... required to establish a material element of the offense"). Much of the confusion surrounding the ignorance-of-the-law maxim stems from "the failure to distinguish [these] two quite different situations." LaFave, Substantive Criminal Law § 5.1(d), at 585.

588 U.S. at 234.

The Court came to a similar conclusion in *Liparota v. United States*, 471 U.S. 419 (1985) holding that a statute criminalizing the possession of food stamps "in any manner not authorized by statute or regulations" required subjective knowledge that the stamps were possessed in violation of some other specific food stamp regulation. As stated in the Model Penal Code, as cited in *Rehaif*, "Ignorance or mistake as to a matter of fact or law is a defense if: the ignorance or mistake negatives the purpose, knowledge, belief, recklessness or negligence required to establish a material element of the offense." Model Penal Code § 2.04.

Thus, the Defendant should be given every right to argue that he made a mistake of fact regarding relevant program rules that prevented him from forming any intent to defraud, or that was made in good faith. Given the complexity of the regulations and waivers that the United States itself is expected to offer and rely on at trial, there is no basis to preclude the defense from arguing about (and potentially offering evidence proving) their subjective understanding of those regulations as it pertains to *mens rea*. The Court should therefore deny the United States' motion.

## II.    Government Motion *in Limine* to Preclude Argument or Evidence Designed to Elicit Jury Nullification (ECF No. 412)

As support for this motion, the government offers only the uncontroversial principle that Defendants may not advocate jury nullification, coupled with an

unsupported assertion that "the United States has reason to believe that the defendants may attempt to put the government on trial by introducing evidence and argument concerning the United States' motivation for conducting the criminal investigation and prosecution of this case."  ECF No. 412 at 2.  The government does not identify the referenced "reason."

The government also asks the Court to broadly preclude all "questions and arguments about the defendants' race, ethnicity, culture, or religion" unless the defendants show them "to have relevance to the question of whether the government has met its burden."  In support, the government cites a single question asked at trial in *United States v. Farah* about a food item listed on a menu from one of the food distribution sites at issue in that case.  ECF No. 412 at 3.  From that one question, the government draws the unfounded conclusion that the *Farah* defendants were implicitly asking the jury to nullify because of their "cultural or religious background and beliefs," and suggests that the defendants in this case might also improperly seek to nullify.  *Id.* The government's claim is completely unfounded.

The government's suggestion that the Defendants might seek to use their race or ethnicity as a nullification defense is both unfounded and improper.[1]  If the government

_____

[1] It is also particularly audacious given the government's own request to introduce evidence of Defendant Salah's race and immigration status under Rule 404(b).  As detailed in Defendants Salah's motions in limine, the government seeks to improperly admit (1) immigration records identifying him as a Somali citizen who entered the U.S. without inspection, ostensibly to prove his consciousness of guilt, and (2) a video depicting violence between two Black men completely unrelated to Defendant Salah and Salah's use of the "N-word" as evidence that he is a member of a "street gang," in a case

6

believes that evidence or argument offered at trial is inappropriate, prosecutors should object at that time so the Court can properly consider their objections. The Court denied the government's "jury nullification" motion as moot in *Farah*, Case No. 22-cr-00124-NEB-DTS, ECF No. 447, and should do the same here.

Perhaps the most concerning aspect of the United States' motion is that it presupposes that the Defendants could never have any basis to allege bias in the United States' investigation. To the contrary, the Defendants have a broad Constitutional right to develop arguments of bias by government witnesses. As explained fully in *Davis v. Alaska*:

> The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him."…Confrontation means more than being allowed to confront the witness physically. 'Our cases construing the (confrontation) clause hold that a primary interest secured by it is the right of cross-examination.' *Douglas v. Alabama*, 380 U.S. 415, 418 (1965).
>
> ***
>
> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, *the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.* One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. *A more particular*

---

involving allegations of wire fraud, bribery, and money laundering. *See* ECF Nos. 423, 424.

> *attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'* 3A J. Wigmore, Evidence s 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.

415 U.S. 308, 316 (1974) (emphasis added) (citing *Greene v. McElroy*, 360 U.S. 474, 496–97 (1959)); *see also United States v. Sigillito,* 759 F.3d 913, 937 (8th Cir. 2014) ("Confrontation Clause issues arise when a district court restricts the scope of cross-examination, for restrictions can effectively emasculate the right of cross-examination itself.") (internal quotation omitted); *id* ("cross-examination is peculiarly appropriate in mail-fraud cases.") (internal quotation omitted).

The prosecution should not seek to limit the defense's right to cross-examine witnesses based on bias.

## III. Government Motion *in Limine* to Preclude Introduction of Hearsay Materials and to Preclude Defense From Attempting to Introduce Exhibits Through Government Witnesses in the Presence of the Jury (ECF No. 413)

The government's next motion *in limine* seeks to exclude broad categories of evidence—meal counts, invoices, claims submissions, meal delivery authorization forms, photographs, videos, audio recordings, and site monitoring forms—as hearsay and lacking foundation. The Court should deny the government's motion as premature and reserve ruling on evidentiary objections for trial.

For starters, the government's motion puts the cart before the horse. It asserts that the documents it seeks to exclude are "fake," were "created on an ad hoc basis by various

sites or vendors to support fraudulent claims," and were "manufactured to support the scheme"—the very conclusions the government must prove beyond a reasonable doubt at trial. ECF No. 413 at 3-4. The government then improperly asks the Court to rule that these unidentified documents constitute inadmissible hearsay based on that premature conclusion. *If*, at trial, the Defendants were to offer these records for a hearsay purpose, and *if* the Defendants were unable to show that they were subject to a hearsay exception, the government could ask the Court to exclude them then. But the government's request that the Court do so now, on a blanket basis, without any supporting evidence, is improper and should be denied.

The government's attempt to preclude the defense from even attempting to establish foundation is even worse. The government starts by arguing that these as-yet unidentified records "lack proper foundation." ECF No. 413 at 4. That is premature at best. Whether proper foundation can be laid to admit a particular record will depend on the record itself and the sponsoring witness. Neither is before the Court on the government's motion. But the government goes further, asking the Court to preclude the defense from even "showing such exhibits" (which exhibits?) "to government witnesses" (which witnesses?) "in the presence of the jury when the witness cannot lay foundation." ECF No. 413 at 4. Whether a witness can establish foundation for a record will depend on the nature of the record and the witness's knowledge. The government has identified neither any specific record nor any specific witness to the Court, so there is nothing for the Court to rule on.

Finally, the government's suggestion that the Defendants might knowingly present a witness with a record for which they cannot lay foundation as "a back-door method of exposing inadmissible and untrustworthy documents and evidence to the jury," ECF No. 413 at 5,[2] is unfounded and uncalled for. Defense counsel know how to offer exhibits at trial and understand that neither side is entitled to publish the substantive contents of unadmitted material to the jury.

Although it might make the trial easier for the United States if the defense was not allowed to even *attempt to* offer exhibits, that would abridge another well-established Constitutional right. *Taylor v. Illinois*, 484 U.S. 400, 409 (1988) ("The right of the defendant to present evidence stands on no lesser footing than the other Sixth Amendment rights...") (internal quotation omitted).

If the government believes that the defense has presented a witness with a record for which they cannot establish foundation, the government may object at trial before the witness is questioned about the record. The Court should deny the government's motion.

## IV. Government Motion *in Limine* to Preclude Argument or Inquiry to the Government's Investigation (ECF No. 414)

The Court should deny the government's request for an order broadly precluding all evidence and questioning relating to "investigative steps not taken by the government," ECF No. 414 at 1, because such an order would be contrary to Eighth

---

[2] The government accuses defense counsel in *Farah* of such conduct but cites no specific examples in support. ECF No. 413 at 5. Even if the government's accusation had any merit, defendants in this case have different counsel, while the prosecution team remains largely the same as in *Farah*.

Circuit precedent. In *United States v. Cox* the Eighth Circuit approved a supplemental jury instruction that jurors "can consider [the fact that fingerprints were not taken] along with all the other evidence in the case in determining whether the prosecution has proved its case beyond a reasonable doubt." 627 F.3d 1083, 1086 (8th Cir. 2010). The government's motion cites no Eighth Circuit authority whatsoever, much less *Cox*, which is squarely at odds with the government's request.

Numerous other circuits have reached the same conclusion. *See, e.g., United States v. Saldarriaga*, 204 F.3d 50, 52 (2d Cir. 2000) (affirming instruction to jury that "if suggesting things that [the government] could have done leads you to think, well, maybe I have a reasonable doubt because I didn't have any evidence on that subject, if that happens, why, then, of course, that is a reasonable doubt like anything else"); *United States v. Lemon*, 714 F. App'x 851, 861 (10th Cir. 2017) (jury instruction on government investigative techniques is appropriate where it "does not prevent the jury from concluding that a failure to employ certain investigative methods nevertheless detracts from the credibility of the government's evidence") (citation omitted); *United States v. Holloway*, 774 F. App'x 147, 148 (4th Cir. 2019) (approving instruction that jurors *may* "consider the evidence and argument by counsel that the Government did not utilize specific investigative techniques in deciding whether the Government met its burden of proof."); *United States v. Brown*, 658 F. App'x 100, 102 (3d Cir. 2016) (approving instruction that jury may "consider [the lack of testing] in deciding whether the

Government has met its burden")[3]; *United States v. Lassend*, 545 F. App'x 3, 5 (1st Cir. 2013) (affirming instruction that jury "could draw reasonable inferences from the fact that certain tests were inconclusive or not conducted, or that certain techniques were not used"); *see also Commonwealth v. Bowden*, 399 N.E.2d 482, 491 (Mass. 1980) (reversible error where instructions removed from jury's consideration the failure of the authorities to conduct certain tests or produce certain evidence).

This is for good reason. Questioning about investigative steps that the government did or did not take is essential to establish the scope and limits of the government's evidence, including the knowledge of the case agents testifying in support of the government's case. The government's decision, for example, not to conduct physical surveillance of a particular location goes directly to the limits of government witnesses' knowledge of whether and how much food was being distributed at the sites at issue in this case, and thus the strength of the government's claim that the Defendants' fraudulently claimed reimbursement for meals served at those sites.

Indeed, in *Farah* defense counsel conducted extensive questioning about the investigative steps the government had and had not taken. *See, e.g., Farah* Trial Tr. Vol.

---

[3] The Third Circuit's *model* jury instruction No. 4.14 states: "During the trial you heard testimony of witnesses and argument by counsel that the government did not use specific investigative techniques[.] . . . You may consider these facts in deciding whether the government has met its burden of proof[.]"). Third Circuit Model Criminal Jury Instructions, 4.14.

IX at 2084:9-2091:3, 2171:15-2175:24, 2184:12-2187:13; Vol. XI at 2646:4-2657:18, 2674:24-2676:10.  The government did not object to this questioning.[4]

The government's own cited authorities undermine, rather than supporting, their motion.  As noted above, in *Saldarriaga*, *see* ECF No. 414 at 3, the Second Circuit affirmed the trial court's instruction to the jury that:

> However, if suggesting things that [the government] could have done leads you to think, well, maybe I have a reasonable doubt because I didn't have any evidence on that subject, if that happens, why, then, of course, that is a reasonable doubt like anything else.

204 F.3d 50, 52 (2d Cir. 2000).  This instruction cannot be squared with the government's request that the defendants be wholly precluded from inquiring into "investigative steps not taken by the government."  ECF No. 414 at 1.

*United States v. Zaccaria* and *United States v. Veal*, *see* ECF No. 414 at 3, similarly say nothing about a defendant's right to challenge "whether the prosecution has proved its case beyond a reasonable doubt," *Cox*, 627 F.3d at 1086, by considering investigative steps not taken by the government.  In *Zaccaria*, the court upheld the trial court's preclusion of questions about whether the government subjected witnesses to polygraph tests, designed not to show a lack of evidence, but to demonstrate that the government was "playing fast and loose."  240 F.3d 75, 81 (1st Cir. 2001).  And in *Veal*, the defendant sought to introduce evidence of preliminary, but subsequently corrected,

---

[4] One limited exception was when the government objected to the question, "And so you chose not to conduct physical surveillance in connection with this case at any of those sites, correct?" as misstating Special Agent Jared Kary's prior testimony.  *See Farah* Trial Tr. Vol. IX at 2186:22-2187:7.  The Court overruled that objection.  *Id*.

miscalculations by the government to show that the government's investigation was "sloppy." 23 F.3d 985, 989 (6th Cir. 1994).

In short, there is no basis for the government's request. If the government believes that any evidence or questioning at trial is improper, it may object at that time. And if the Defendants question government witnesses about investigative steps that the government did not take, the government may elicit testimony on redirect to explain why those steps were not taken. But the government's request, made before any evidence has been offered, for a blanket ban on a category of evidence that has been found admissible by the Eighth Circuit and many others, is improper and should be denied.

## V.     Government Motion *in Limine* to Preclude Evidence and Argument of Lawful Behavior (ECF No. 415)

In its "lawful conduct" motion, the government again asks the Court to exclude a broad and vaguely defined category of evidence—evidence of other "lawful conduct"—without citing any specific evidence that the government anticipates the Defendants may introduce. Granting the government's sweeping request before any specific evidence or objection is before the Court would risk precluding the Defendants from introducing properly admissible evidence which may be critical to their defenses. *See United States v. Azteca Supply Co.*, 2010 WL 4962828, at *8 (N.D. Ill. Dec. 1, 2010) ("the Court will not make pretrial rulings excluding categories of evidence based on the Government's position that such evidence could conceivably be argued for an improper purpose"); *see also Farah*, No. 22-cr-00124-NEB-DTS, ECF No. 447 (denying "lawful conduct" motion in limine as moot).

14

For example, the government alleges that many of the businesses referenced in the indictment are "shell companies" created to receive and launder funds, bribe food program administrators, and commit wire fraud. *See, e.g.*, ECF No. 1 at ¶¶ 37, 49, 184(b) and (d), 187. The government repeats many of these allegations in its trial brief. *See, e.g.*, ECF No. 435 at 8, 12, 21. As part of their defense, the Defendants may seek to offer evidence that these alleged "shell companies" were in fact legitimate businesses that served and delivered, or supported the delivery of, food.

Such evidence would not be offered, as the government suggests, to show that because a Defendant acted lawfully in one instance, he cannot have acted unlawfully in another. ECF No. 415 at 1-2. Nor would it be "good acts" evidence offered to establish the defendants' "character or character trait[s]." *Id*. at 2; Fed. R. Evid. 405. Rather, it would be offered to illustrate the operations of the allegedly fraudulent businesses in question, to rebut the government's allegations that those businesses were "created and used to receive and launder the proceeds of the fraudulent scheme." ECF No. 435 at 12. Even if this were "good acts" evidence, as one court interpreting the *Scarpa* case cited by the government held, "evidence of a defendant's prior 'good acts' may be relevant where it is alleged the defendant has 'always' or 'continually' committed 'bad acts,' or where such 'good acts' 'would undermine the underlying theory of a criminal prosecution.'" *United States v. James*, 607 F. Supp. 3d 246, 257 (E.D.N.Y. 2022).

Further, the government's motion ignores that evidence of lawful conduct in connection with the Federal Child Nutrition program is relevant to the jury's determination of *mens rea*, and not for purposes of propensity. Evidence that a

Defendant repeatedly complied—or tried to comply—with Federal Child Nutrition Program rules is fundamental to the question of good faith and whether the government can meet its burden to prove the intent to defraud.

If the government believes that evidence offered by the defendants at trial would violate Rule 405 or is otherwise inadmissible, it is free to object at that time, when the Court will have a sufficiently developed record on which to rule. But the government should not be permitted, before any evidence has been offered, to interfere with the Defendants' constitutional right to present a "complete defense," *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), by seeking a sweeping ruling that, as requested, could sweep in relevant and admissible evidence. The Court should deny the government's motion as moot, as it did in *Farah*. Case No. 22-cr-00124-NEB-DTS, ECF No. 447.

## VI. Government Motion *in Limine* to Preclude Reference to Defendants' Punishment or Sentencing Matters (ECF No. 416)

The Court should deny as moot the government's motion seeking to exclude reference to the defendants' potential punishment upon conviction. The parties have jointly requested that the jury be instructed that it "may not consider punishment in any way in deciding whether the United States has proved its case beyond a reasonable doubt." ECF No. 419 at 181. Defendants have never suggested that they intend to make any argument to the jury inconsistent with this instruction. No further statement or order on this issue is necessary.

If the Court does not simply deny the government's motion, however, any order that the Court does enter should preserve the defendants' right to cross-examine

witnesses regarding any plea deals pursuant to which they are testifying—including regarding possible punishment they could face both absent and with those agreements.

Inquiry into the benefits that a witness stands to receive from a plea bargain is "essential" to "effective cross-examination":

> "When a witness who has entered into a plea agreement and, as contemplated in the plea agreement, takes the stand to give evidence against a co-defendant, the credibility of that witness is highly relevant. To constitute effective cross-examination, an advocate's inquiry into the terms of the agreement is essential."

*United States v. Roan Eagle*, 867 F.2d 436, 443-44 (8th Cir. 1989) (citing *Giglio v. United States,* 405 U.S. 150, 154-155 (1972); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986) ("exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.") (citation omitted).  Any order that the Court enters must protect the defendants' rights under the Confrontation Clause by preserving their ability to fully cross-examine the government's witnesses regarding any applicable plea agreements.

## VII.    Government Motion *in Limine* to Preclude References to the Government's Charging Decisions (ECF No. 417)

The Court should deny the government's motion *in limine* to preclude references to its charging decisions for multiple reasons.  The motion is not ripe because no Defendant has yet presented any evidence relating to the government's charging decisions.  And the government's broad request—to preclude all references to the government's charging decisions—is at odds with the defendants' fundamental right to present a complete defense. *See Holmes v. South Carolina*, 547 U.S. 319 (2006)

("'Whether rooted directly in the Due Process Clause or in the Compulsory Clause of the Sixth Amendment, the constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.'") (citing *Krane v. Kentucky*, 476 U.S. 683, 690 (1986)).

To be clear, the Defendants have not raised a claim of selective prosecution seeking dismissal of the government's indictment. Defendant Salah will not attempt to assert a defense of selective prosecution before the jury absent a ruling from the Court that would allow it. *See, e.g., United States v. Matter,* 818 F.2d 653, 654 (8th Cir. 1987). But the government should not be allowed to confuse the assertion of a selective prosecution defense with a fully proper, vigorous, and unfettered cross-examination of uncharged witnesses, some of whom may have been employed by a government agency, on any manner of his or her knowledge, motive, opportunity, understanding, neglect, fear, or favor from stated or unstated concerns about their own conduct in relation to this case.

The government acknowledges that it intends to offer evidence of "uncharged individuals and other co-conspirators" who allegedly "assisted the defendants in carrying out the scheme to defraud[.]" ECF No. 417 at 3. If these uncharged individuals testify at trial, they may testify to matters that could incriminate themselves and then further allege they incriminate one or more Defendants charged. This type of testimony or evidence is intrinsic to elements of the charged crimes. It is well-settled law that Defendants have the right to cross-examine witnesses on the benefits they receive due to their testimony. As was noted previously, the Eighth Circuit has indeed described inquiry into those benefits as "essential" to "effective cross-examination." *United States v. Roan Eagle*, 867

F.2d 436, 443-44 (8th Cir. 1989); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986). Defendants' ability to cross-examine these witnesses about their motivations for their testimony is fundamental to Defendants' constitutional rights.

The Court should deny the government's motion as moot, as it did in *Farah*. Case No. 22-cr-00124-NEB-DTS, ECF No. 447. If the Court does not do so, any order the Court enters should not interfere with the defendants' rights to fully cross-examine any witness presented by the government at trial.

## VIII.  Government Motion *in Limine* to Sequester Witnesses (ECF No. 418)

The government asks the Court to sequester witnesses pursuant to Federal Rule of Evidence 615(a), and to exempt three of its own witnesses— two case agents and an FBI Forensic Accountant—from the requested sequestration order. The Court should deny the government's motion to exceed the number of witnesses properly exempt from a sequestration order and strictly hold the government to the requirements of Rule 615.

Rule 615 mandates witness sequestration upon party request. *See* Fed. R. Evid. 615. Sequestration is a "time-honored practice designed to prevent the shaping of testimony by hearing what other witnesses say." *Taylor v. United States*, 388 F.2d 786, 788 (9th Cir. 1967). Rule 615 explicitly sets forth the circumstances under which witnesses can be exempted from a sequestration order. *See* Fed. R. Evid. 615(a)–(d).

The government's motion does not specify which exception(s) to Rule 615 it seeks to invoke. Presumably, the government believes that one of its three witnesses should be exempt from sequestration as an "officer or employee of a party that is not a natural person," even though it has not "designated" any of its three witnesses "as the

19

[government's] representative." Fed. R. Evid. 615(a)(2). And only one such representative is permitted in any case, as the 2023 amendments to Rule 615 made clear. *See* Fed. R. Evid. 615, 2023 Advisory Committee notes (Rule 615 "has been amended to clarify that the exception from exclusion for entity representatives is limited to one designated representative per entity"). Defendant Salah does not object to the normal custom in this District of exempting one case agent from sequestration under Rule 615(a)(2).

But the Court should deny the government's request to exempt an additional two witnesses from its sequestration order. The government's motion does not attempt to "show[]" any of its witnesses to be "essential to presenting [its] claim or defense." Fed. R. Evid. 615(a)(3). Indeed, the comments to Rule 615 explain that "it would not seem the government could often meet the burden under Rule 615 of showing that the agent's presence is essential." Fed. R. Evid. 615, Notes of Committee on the Judiciary. Absent such a showing, the government should be held to the requirements of Rule 615 and permitted only one representative exempt from the Court's sequestration order.

Moreover, whether the representative that the government designates pursuant to Rule 615(a)(2) may testify at trial is "left to the trial court's discretion." *United States v. Sykes*, 977 F.2d 1242, 1245 (8th Cir. 1992) (noting potential for prejudice if testimony of witness exempt from sequestration order is not "separate and distinct from the testimony of the other government witnesses" and may have been affected by other witnesses' testimony). Sequestration is designed to "restrain" witnesses from being able to "tailor" their testimony "to that of earlier witnesses" and aid the factfinder in "detecting

20

testimony that is less than candid." *Geders v. United States*, 425 U.S. 80, 87 (1976). This is particularly important in those cases like this one "in which the outcome depends on the relative credibility of the parties' witnesses." *United States v. Farnham*, 791 F.2d 331, 335 (4th Cir. 1986). The government's "primary case agents," ECF No. 418 at 2, should not be permitted to have their testimony tainted by hearing the testimony of the other case agents, witnesses, and each other. This is true under any circumstances, but even more so here, where it is possible that witnesses may be testifying after entering a plea agreement with the government in the hope of substantial assistance motions under U.S.S.G. § 5K1.1.

Finally, Defendant Salah further requests that the Court's sequestration order "prohibit disclosure of trial testimony to witnesses who are excluded from the courtroom" and "prohibit excluded witnesses from accessing trial testimony." Fed. R. Evid. 615(b). When these provisions were added to Rule 615 in 2023, the Advisory Committee noted that they are designed to prevent witnesses from "learning about, obtaining, or being provided with trial testimony," consistent with courts that had recognized "that the core purpose of the rule is to prevent witnesses from tailoring their testimony to the evidence presented at trial." Fed. R. Evid. 615, 2023 Advisory Committee notes.

## IX. Government Motion *in Limine* to Allow Witness to Be Recalled to Facilitate Presentation of Evidence at Trial (ECF No. 434)

The government's final motion *in limine* asks permission to recall "certain witnesses" to avoid "having law enforcement agents forced to be on the stand for days at a time introducing evidence related to various different entities and their fraudulent

claims." ECF No. 434 at 2.[5]  The government's motion is so vague as to make the basis for its request impossible to discern.  The government does not identify the witnesses subject to this request, what testimony those witnesses may offer, the order in which it intends to offer that testimony, why that testimony could not be offered in a single sitting (potentially lasting more than one day, as was the case in *Farah*), or any other specific reason for the need to call them more than once.

The government does not state, for example, that it needs to recall witnesses to present its case in chronological order, which was the proffered reason in both cases the government relies on.  *See United States v. Puckett*, 147 F.3d 765, 770 (8th Cir. 1998); *United States v. Butera*, 677 F.2d 1376, 1381 (11th Cir. 1982).  And the government did not seek to recall any witnesses at trial in *Farah*, even though the government's "primary case agents" and forensic accountant in this case—FBI Special Agents Kary and Wilmer, and FBI Forensic Accountant Pauline Roase—were all among the witnesses the government called in that case.  *See* ECF No. 418 at 2.

The Court of course has discretion to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence[.]"  Fed. R. Evid. 611(a).  But courts have recognized that serial presentation of the same witness, "particularly one who is guiding or shepherding the evidence at trial (which seems likely to occur in this case)" will cause the witness to "become unfairly credible, reliable, or familiar simply by virtue

---

[5] At another point the government indicates that it "anticipates that it will need to recall *a witness*," suggesting that the government may only have one such witness, albeit one the government does not identify, in mind.  ECF No. 434 at 1 (emphasis added).

of repeated appearances." *United States v. Hamilton*, No. 16-cr-20062, 2017 WL 11469632, at *1 (E.D. Mich. Apr. 18, 2017). Because the government has not offered any specific basis on which the defendants or the Court can evaluate its request, the Court should deny the government's motion.

## **CONCLUSION**

For the foregoing witnesses, Defendant Salah respectfully requests that the Court deny the government's motions *in limine*.

Dated: January 14, 2025

**GREENE ESPEL PLLP**

*s/ Surya Saxena*
Surya Saxena, Reg. No. 0339465
Nicholas Scheiner, Reg. No. 0402470
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
ssaxena@greeneespel.com
nscheiner@greeneespel.com
(612) 373-0830

Attorneys for Defendant Abdulkadir Nur Salah