IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>4. ABDULKADIR NUR SALAH,<br><br>Defendant. | Case No. 22-CR-223(4)(NEB/DTS)<br><br>**MOTION FOR DISCOVERY AND DISCLOSURE** |

Defendant Abdulkadir Salah moves for the following discovery and disclosures based on recent developments.

**I.   MOTION FOR DISCLOSURES REGARDING TAINT/FILTER PROCEDURES.**

After receiving the government's exhibit list and beginning to review exhibits, the defense identified an exhibit reflecting a communication with a lawyer who regularly represented Defendant Abdulkadir Salah and his companies. On Saturday, January 11, 2025, the defense identified the exhibit to the prosecution and asked to speak with someone from the U.S. Attorney's Office's taint team to discuss whether the taint team agreed that the document is privileged and the process the taint team followed to conduct a privilege review.

In response, on January 12, the prosecution team asserted that the document is not privileged because it was forwarded to one of the co-defendants in this case (who is not set for trial on February 3). The prosecution did not respond to the defense's request to identify a taint team member who could speak to the defense about the filter process.

The defense followed up with the following questions in two separate emails on January 12 and January 13:

> How did the government determine that the person [to whom the email was forwarded] was not a joint client or otherwise within the scope of the attorney client relationship?
>
> Did the prosecution team make that determination, or did you use a taint team?
>
> If so, who can I talk to from the taint team to understand their procedures? I ask because there are other privileged documents in the production.
>
> What taint procedures were followed and how did the government make decisions about your position that the privilege was waived for F-22 (and any other documents)?

On January 13, the prosecution team reiterated that their position was that the document was non-privileged. The prosecution team also stated "[w]e followed a filter procedure to identify and remove privileged emails or communications—this generally involves identifying potentially privileged email domains and removing any emails sent to or from that domain from the project so that the investigation team does not have access to those potentially privileged communications." Again, the prosecution did not respond to the defense's request to identify a taint team member that the defense could speak to or provide any information about the process for determining that the email was nonprivileged.

The undersigned responded on January 13 with the following continuing inquiries regarding the prosecution's taint and filter process:

> Thanks for confirming that you used a filter procedure. However, I'd ask that you answer my remaining questions. There are several documents in the EML bates range that were produced in this case that involve lawyers

2

and legal domains. There are 57 documents involving the same legal domain as [Government Exhibit] F-22. My client regularly obtained advice from this same particular lawyer. I understand that the government has decided the document is non privileged, but you haven't explained how the government came to the decision that the forward vitiated the privilege, [or] who made the decision. The forwarded email leaves open the possibility of a joint representation.

Also, if attorney domains were supposed to be filtered, why weren't F-22 and several other documents with this attorney domain and other attorney domains filtered out (including seemingly Faegre)? Was the filter limited to the to/from/cc metadata fields? Which domains were filtered? What did the prosecution team do when it came across a potentially privileged document?

As of the filing of this motion, the prosecution has not responded to the defense's last email on this issue. Given the short time before the pretrial conference, the defense files this motion to preserve the issue and seek a Court order requiring the government to provide detailed information regarding its privilege taint/filter procedure.

As then Magistrate Judge Menedez explained in detail in *United States v. Adams*, 2018 WL 6991106, No. 0:17-cr-00064 (DWF/KMM), there are a number of potential Constitutional concerns and remedies where a prosecutor intentionally or repeatedly accesses a defendant's privileged materials. While the defense is not alleging that any such violations occurred at this time, further information from the prosecution is necessary to demonstrate that a proper taint process was followed and that it effectively minimized the chances that the prosecution team would review Defendants' privileged emails.

Defendant Abdulkadir Salah requests a Court order requiring the United States to provide detailed information regarding the following topics no later than two business days after the pretrial conference:

1) The specific process the United States followed to reach its determination that the privilege over emails was waived due to forwarding the email to a third person.

2) (a) An identification of who made decisions that privilege was waived through forwards; and (b) a description of what steps, if any, were followed to determine whether the person to whom emails were forwarded was jointly represented by the lawyer.

3) A list of the domain names and other search terms that were used to attempt to filter out privileged emails.

4) A detailed description of how this filtering process was conducted.

5) A confirmation of whether a taint team was established and an identification of its members.

6) A description of the taint team's processes and procedures.

7) A description of what the prosecution team did when it came across a potentially privileged email during its review to avoid being exposed to privileged communications.

8) The production of any documents related to the taint and filter procedures followed in this case.

## II. Motion for Complete Rule 16 Disclosures of All Data Seized From Google and Other Online Service Providers Related to Online Accounts.

On January 9, 2025, the defense informed the United States that it had failed to produce email account attribution information (and any data except for email) for over twenty of the Google accounts it obtained through search warrants. After a series of back-and-forth emails, the United States has taken the position that it will only provide Defendant Abdulkadir Salah with copies of the complete set of information it seized from Google accounts that belong personally to Mr. Salah, and not for the numerous individuals the United States alleges as co-conspirators. Thus, even though it has produced substantive email it seized from Google to all Defendants – even Defendants in separate indictments – it now will not produce even the missing copies of attribution information it seized from Google. This is despite that it has already produced some of this attribution for alleged co-conspirators, and even after it produced a few of these attribution documents for other alleged co-conspirators in a prior email exchange with the undersigned.

The United States' position is inconsistent with its own track record in this case and its clear Rule 16 obligations to disclose all material it seized from Google and other service providers. This position is untenable given that the United States has never previously made the unproduced Google data it seized available for inspection or copying (or provided copies).

Against this backdrop, the defense will be materially prejudiced by any further delay in the United States' production of copies of all information it has seized from all

5

Google accounts (and other online accounts) for which it has disclosed some email or data to the Defendants. Indeed, even without prejudice, the United States' continued delay in producing clear Rule 16 evidence could warrant sanctions as serious as suppression or dismissal. *See United States v. Davis,* 244 F.3d 666, 670-672 (8th Cir. 2001)

Given the short time before trial, the United States should not be allowed to further disadvantage the Defendants by merely offering the inspection and copying of these materials, particularly where the United States has so far violated its discovery obligations. The Court should order the United States to immediately provide copies to the defense of all data it seized from Google or other service providers via search warrants, or to certify in writing that all such seized materials have already been copied and produced. If the United States provides such a certification, it should be ordered to list the Bates numbers of the copies of all the materials it has seized.

### III.   *Giglio* and Criminal History Disclosures.

A review of the United States' discovery demonstrates that the government has not disclosed all of the criminal histories and *Giglio* information for several of the witnesses on its witness list. Given the short time before trial, the United States should be ordered to immediately produce updated criminal histories, plea agreements, proffer letters, proffer interviews, recordings, and any and all other criminal history and *Giglio* information for all witnesses on its list.

The defense notes that it raised this request to the United States via email shortly before filing this motion, and the United States has not had sufficient time to respond to

that email. The defense raises this issue in this motion to preserve the issue, given the short time remaining before the pretrial conference.

Dated: January 14, 2025                **GREENE ESPEL PLLP**

*s/ Surya Saxena*
Surya Saxena, Reg. No. 0339465
Nicholas Scheiner, Reg. No. 0402470
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
ssaxena@greeneespel.com
nscheiner@greeneespel.com
(612) 373-0830

Attorneys for Defendant Abdulkadir Nur Salah