UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-223(10) (NEB/DTS)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **FILED UNDER SEAL** |
| v. | ) | |
| | ) | |
| ABDINASIR ABSHIR, | ) | **GOVERNMENT'S MOTION TO** |
| | ) | **REVOKE PRETRIAL RELEASE** |
| Defendant. | ) | |
| | ) | |

The United States of America, by and through its attorneys, Lisa D. Kirkpatrick, Acting United States Attorney for the District of Minnesota, and Joseph H. Thompson, Harry M. Jacobs, Matthew S. Ebert, and Daniel W. Bobier, Assistant United States Attorneys, hereby moves to revoke defendant's pretrial release, pursuant to 18 U.S.C. §§ 3142 and 3148, for violation of the Court's Order Setting Conditions of Release dated September 20, 2022. Dkt. #67. Pursuant to 18 U.S.C. § 3148(b), the United States respectfully requests that the Court revoke defendant's pretrial release and issue an arrest warrant.

I.    **BACKGROUND**

A.    **Defendant's Fraud Scheme**

Defendant Abdinasir Abshir and his co-defendants orchestrated and carried out a scheme that defrauded the Federal Child Nutrition Program, a government aid program designed to provide free meals to children in need. The defendants exploited the Covid-19 pandemic to obtain, misappropriate, and launder tens of millions of dollars in program funds that were intended as reimbursements for the cost of serving

meals and food to children. In all, the defendants fraudulently misappropriated more than $45 million in Federal Child Nutrition Program funds.

As part of their scheme, the defendants created dozens of Federal Child Nutrition Program sites throughout the State of Minnesota, which operated under the sponsorship of Feeding Our Future. The defendants collectively claimed to be serving meals to thousands of children each day throughout the State of Minnesota, for which they fraudulently claimed and received millions of dollars in Federal Child Nutrition Program funds.

In April 2020, during the early days of the Covid-19 pandemic, the Safari Restaurant, a small restaurant on Lake Street in Minneapolis, opened a Federal Child Nutrition Program site under the sponsorship of Feeding Our Future. By July 2020, Safari Restaurant claimed to be serving meals to 5,000 children a day, seven days a week. Eventually, Safari Restaurant claimed to be serving 6,000 children a day. In all, the defendants claimed to have served more than 3.9 million meals to children at the Safari Restaurant site between April 2020 and November 2021.

Safari Restaurant also operated as a vendor purporting to deliver food and meals to Federal Child Nutrition Program sites created by co-conspirators throughout the state of Minnesota, including at a site known as ASA Limited in St. Paul. In September 2020, just three weeks after the company was registered with the Secretary of State, the defendants claimed that the ASA Limited site served breakfast and lunch to 3,000 children a day, seven days a week. Based on these false claims, the co-conspirators received approximately $5 million in Federal Child

Nutrition Program reimbursements for meals purportedly served at the ASA Limited site.

Across all the different sites, the defendants claimed that Safari Restaurant provided more than 2.2 million meals to other Federal Child Nutrition Program sites involved in the scheme. In all, Safari Restaurant received more than $16 million in Federal Child Nutrition Program funds in 2020 and 2021. The owners of Safari Restaurant—defendants Salim Said and Abdulkadir Salah—sent much of this money to their co-conspirators via shell companies created and used to receive and launder the proceeds of the fraudulent scheme.

By October 2020, MDE became concerned about the drastic increase in meal claims by sites under the sponsorship of Feeding Our Future. Due to these concerns, MDE announced that the Federal Child Nutrition Program no longer allowed restaurants and other for-profit companies to enroll as sites. MDE explained that restaurants would only be allowed to participate as meal vendors providing food. MDE further announced that any restaurants enrolled as distribution sites would be closed as of October 31, 2020.

Shortly after MDE disallowed for-profit restaurants, the defendants obtained a non-profit entity, Stigma Free International, for use in carrying out the fraud. They immediately used their new non-profit to open a number of new Federal Child Nutrition Program sites. Other co-conspirators created additional shell companies to serve as for-profit meal vendor companies purporting to provide the meals to be served to children at these sites. Together, the defendants claimed to be serving meals

to tens of thousands of children each day throughout the state of Minnesota, for which they fraudulently claimed and received millions of dollars in Federal Child Nutrition Program funds.

### 1.    The Stigma-Free Willmar Site

Two co-defendants, Ahmed Artan and Abdikadir Mohamud, opened a site under the sponsorship of Feeding Our Future in October 2020 called Stigma-Free Willmar. The site operated out of a small storefront restaurant in downtown Willmar called FaaFan and claimed to serve meals to up to 3,000 children a day, seven days a week. Another co-defendant, Abdikadir Mohamud, created a shell company called Tunyar Trading that purported to be a meal vendor providing meals to be served at the Stigma-Free Willmar site. Between November 2020 to November 2021, these co-conspirators falsely claimed to have served approximately 1.6 million meals at the Stigma-Free Willmar site. The co-conspirators received more than $5 million in Federal Child Nutrition Program funds based on these claims.

### 2.    The Stigma-Free Mankato Site

Two other defendants, brothers Abdinasir Abshir and Asad Abshir, opened another site in October 2020 called Stigma Free Mankato. The site purported to serve meals to 3,000 children a day, seven days a week out of a small restaurant in North Mankato called J's Sambusa. The Abshirs created a shell company called Horseed Management that purported to serve as a meal vendor providing meals to be served at the site. Between November 2020 to November 2021, the Abshirs and their co-conspirators claimed to have served more than 1.6 million meals at the Stigma-Free Mankato site. Based on these claims, they received approximately $5 million in

4

Federal Child Nutrition Program funds. Abdinasir Abshir then transferred millions of dollars from Horseed Management to himself and other co-conspirators, including Said.

### B.    The Indictment

On September 13, 2022, a grand jury returned a 61-count indictment charging 14 defendants—Aimee Bock, Abdikerm Eidleh, Salim Said, Abdulkadir Salah, Ahmed Omar-Hashim, Abdi Salah, Abdihakim Ahmed, Ahmed Artan, Abdikadir Mohamud, Abdinasir Abshir, Asad Mohamed Abshir, Hamdi Omar, Ahmed Ghedi, and Abdirahman Ahmed—with a number of crimes, including: conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 371 and 1343; wire fraud, in violation of 18 U.S.C. § 1343; conspiracy to commit federal programs bribery, in violation of 18 U.S.C. §§ 371 and 666; federal programs bribery, in violation of 18 U.S.C. § 666; conspiracy to commit concealment money laundering, in violation of 18 U.S.C. § 1956(a) and (h); and money laundering, in violation of 18 U.S.C. § 1957.

### C.    Defendant Abshir's Attempt to Intimidate a Cooperating Defendant

On February 10, 2025, trial commenced against defendants Aimee Bock and Salim Said. Abdinasir Abshir and other defendants were scheduled to be tried at a later date.

On February 18, 2025, the government presented testimony from Postal Inspector John Western. During the morning session, Inspector Western testified about the Stigma Free Willmar site. Just prior to the lunch break, the government explained that Inspector Western would testify about the Stigma Free Mankato site

after lunch. The Stigma Free Mankato site was run by defendant Abdinasir Abshir. The government informed defense counsel that Inspector Western's testimony would likely last another hour, after which the government planned to call a cooperating defendant.[1]

After the lunch break, defendant Abdinasir Abshir and another man entered the courtroom loudly. Based on the timing of Abshir's arrival in court, it appeared as though someone informed him of the testimony related to his fraudulent food site. Although the gallery was not crowded, they sat in the front row on the far side of the courtroom closest to the jury box. After sitting down, Abshir and the other man were disruptive and making noise. At one point, a court security officer appeared to ask one of the men to leave. Both men then left the courtroom.

During the afternoon break, the attorney representing the cooperating defendant informed the government that one of the two men—later determined to be Abshir—had approached his client in the hallway. The cooperating defendant was sitting on the bench outside the courtroom waiting to testify. Abshir approached the cooperating defendant. The cooperating defendant recognized Abshir from his prior interactions in the course of the fraud scheme, but could not recall his name. The cooperating defendant assumed—incorrectly—that Abshir was also waiting to testify as a trial witness. The cooperating defendant told Abshir that he was testifying. Abshir then asked the cooperating defendant to step into the bathroom with him so

---

[1]    The government had previously informed defense counsel of the name of the cooperating defendant scheduled to testify.

they could talk. The cooperating defendant said that he felt intimidated and understood that Abshir was trying to intimidate him. The cooperating defendant declined to enter the bathroom and returned to the witness room with his lawyer. Later that day, the cooperating defendant confirmed that a photograph of Abshir pictured the man who had approached him and tried to intimidate him.

According to the cooperating defendant's attorney, after this interaction, Abshir and his associate sat at the far end of the hallway staring at the cooperating defendant and his lawyer as they sat outside the courtroom. At least one of them appeared to be vaping.

## II.    ABSHIR'S BOND SHOULD BE REVOKED

Under 18 U.S.C. § 3148, a person who has been released pursuant to 18 U.S.C. § 3142, and who has violated a condition of his release, is subject to a revocation of release and order of detention. 18 U.S.C. § 3148(a). The Court may issue a warrant for the arrest of a defendant charged with violating a condition of release. *Id*.

The Court "shall enter an order of revocation and detention if, after a hearing, the judicial officer finds . . ." either "probable cause to believe that the person has committed a Federal, State, or local crime while on release"; or "clear and convincing evidence that the person has violated any other condition of release"; and either:

(1)    ". . . there is no condition or combination of conditions of release that will assure the person will not flee or pose a danger to the safety of any other person or the community;" or

(2)    "the person is unlikely to abide by any condition or combination of conditions of release."

18 U.S.C. § 3148. Furthermore, if there is probable cause that the defendant committed a felony offense, "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." *Id.*

Based on the information detailed above, there is probable cause to believe Abshir has committed another felony offense while on release by attempting to intimidate a government witness and cooperating inside of the courthouse shortly before his testimony was scheduled to begin. In doing so, Abshir also violated the conditions of his release, which expressly ordered that he "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including co-defendants/co-conspirators under this and all related cases." Dkt. #67 ¶7(g).

Based on Abshir's attempt to tamper with and intimidate a government witness, there are no conditions of release that will secure the safety of the community if he is allowed to remain on release. *See* 18 U.S.C. § 3148(b)(2)(A). Abshir has also demonstrated that he is unlikely to abide by any condition or combination of conditions of release that this Court could fashion. *See* 18 U.S.C. § 3148(b)(2)(B). Abshir attempted to intimidate a government witness and cooperating defendant inside of the federal courthouse—mere feet from the sitting federal judge as she presided over the trial of his co-defendants. Abshir's conduct shows a disregard for the Court's Order setting terms of pretrial release, and a likelihood that, unless he is

detained through trial, he will continue to pose a threat of the integrity of the current proceedings.

### III.    CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court revoke defendant's pretrial release and issue a warrant for his arrest.

Dated: February 19, 2025

Respectfully submitted,

LISA D. KIRKPATRICK
Acting United States Attorney

BY:  _/s/ Joseph H. Thompson_
JOSEPH H. THOMPSON
HARRY M. JACOBS
MATTHEW S. EBERT
DANIEL W. BOBIER
Assistant U.S. Attorneys