UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>3. SALIM AHMED SAID,<br><br>　　　　Defendant. | Case No. 22-cr-223 (NEB/DTS)<br><br>**MOTION FOR PRELIMINARY ORDER OF FORFEITURE** |

The United States of America, through Daniel N. Rosen, United States Attorney for the District of Minnesota, and Craig R. Baune, Assistant United States Attorney, respectfully moves this Court for a Preliminary Order of Forfeiture that includes: (1) directly traceable assets set forth below; (2) a $7,837,656.60 money judgment forfeiture pursuant to 18 U.S.C. § 981(a)(1)(c), 28 U.S.C. § 2461(c) and Fed. R. Crim. P. 32.2; (3) a General Order of Forfeiture pursuant to Fed. R. Crim. P. 32.2(b)(2)(C); and (4) an order authorizing discovery to locate assets subject to forfeiture.

## BACKGROUND

On September 13, 2022, a Grand Jury in the District of Minnesota returned an Indictment against Defendant Salim Ahmed Said and others. ECF No. 1 ("the Indictment"). The Indictment contained Forfeiture Allegations providing notice that pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the United States sought forfeiture upon conviction of any of Counts 1 through 40 of any property, real or personal, constituting or derived

from proceeds traceable to any such violation. The Indictment also contained Forfeiture Allegations providing notice that, pursuant to Title 18, United States Code, Section 982(a)(1), the United States sought forfeiture upon conviction of any of Counts 41 through 61 of any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957, and any property traceable to such property. *Id.*

On March 19, 2025, following a lengthy trial, a jury found Said guilty of one count of Conspiracy to Commit Wire Fraud (Count 1), four counts of Wire Fraud (Counts 2, 5, 8, and 12), one Count of Conspiracy to Commit Federal Programs Bribery (Count 15), nine counts of Federal Programs Bribery (Counts 16-19, 32, 34, and 36-38), one count of Conspiracy to Commit Money Laundering (Count 41), and five counts of Section 1957 Money Laundering (Counts 42, 44, 51, 52, and 57). ECF No. 582.

The wire fraud conspiracy count concerned a massive fraud scheme through which defendants conspired to, among other things, defraud the government through the submission of claims that falsely asserted they were entitled to reimbursement for meals they purported to have served to needy children. The money laundering conspiracy concerned the laundering of those proceeds among and between co-conspirators. The defendants, among other things, transferred the proceeds of the wire fraud conspiracy between their respective companies, including sham entities, to hide the source, nature and ownership of those funds. This included, for example, creating invoices for alleged "consulting" services and the exchange of false invoices to create

2

purportedly legitimate explanations for transfers of large sums of fraud proceeds between various defendants and their bank accounts. The conspirators also used shell companies to buy real estate, vehicles, personal property and expensive travel, among other things, as proven at trial. *See* Declaration of Pauline Roase ("Roase Dec.").

Said was a co-owner of Cosmopolitan Business Solutions, d.b.a. Safari Restaurant ("Cosmopolitan Solutions"), along with Abdirahman Ahmed and Abdulkadir Salah. Safari Restaurant was a small storefront restaurant and these individuals enrolled Cosmopolitan Solutions in the Federal Child Nutrition Program ("FCNP"), which they falsely invoiced for millions of dollars based upon claims that the restaurant was serving meals to thousands of children every day. Roase Dec. ¶ 7. In addition, Cosmopolitan Solutions acted as vendor purporting to deliver food to be served at other FCNP sites. *Id*. Based on Said's fraudulent claims, Cosmopolitan Solutions and its owners received more than $47 million in Federal Child Nutrition Program funds to which they were not entitled. *Id.* ¶ 6.

Through this motion, the United States seeks an order forfeiting certain property seized from Said, imposing a money judgment forfeiture, authorizing discovery to locate assets that could be forfeited from him, and allowing forfeiture of any subsequently-discovered forfeitable assets.

## ARGUMENT

### I. A PRELIMINARY ORDER OF FORFEITURE SHOULD BE ENTERED.

**A. Legal Standard**

The United States seeks a Preliminary Order of Forfeiture pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure. Rule 32.2(b) provides:

> (b) Entering a Preliminary Order of Forfeiture.
>
>> (1) Forfeiture Phase of the Trial.
>>
>>> (A) Forfeiture Determinations. As soon as practical after a verdict of finding of guilty . . ., on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense.. . .
>>>
>>> (B) Evidence and Hearing. The court's determination may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable. If the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty.
>>
>> (2) Preliminary Order.
>>
>>> (A) Contents of a Specific Order. If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture . . . directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria. The court must enter the order without regard to any third party's interest in the property. Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c).

Criminal forfeiture is a part of sentencing; it is not a substantive element of the offense. *Libretti v. United States*, 516 U.S. 29, 38-39 (1995). As such, the preponderance of the evidence standard of proof applies. *United States v. Huber*, 462 F.3d 945, 949 (8th Cir. 2006); *see also, e.g., United States v. Peithman,* 917 F.3d 635, 651 (8th Cir. 2019).

Because the governing statutes include compulsory terms, forfeiture is mandatory. *United States v. Williams,* 720 F.3d 674, 702 (8th Cir. 2013) (differentiating "shall" from "may" in forfeiture statutes). The plain language of 28 U.S.C. § 2461(c) mandates forfeiture when a defendant is convicted of an offense giving rise to forfeiture. *Id.* ("If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case. . .") (emphasis added); *see also United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014) ("The word 'shall' does not convey discretion").

Moreover, "Forfeiture is mandatory even when restitution is also imposed." *Id.*; *see also United States v. Newman*, 659 F.3d 1235, 1241 (9th Cir. 2011) (defendant, pursuant to 18 U.S.C. § 982(a)(2), is "not entitled to a credit for the amount that he had repaid toward the fraudulently obtained loan."); *United States v. Adetiloye*, 716 F.3d 1030, 1041 (8th Cir. 2013) ("Restitution is loss based, while forfeiture is gain based.") (citations omitted). Although forfeiture and restitution are separate aspects of a criminal sentence, forfeited assets are often used to compensate criminal victims through the remissions process authorized by 28 C.F.R. Part 9.

Third-party claims to forfeitable property are addressed in an ancillary proceeding and are not at issue at this stage of the forfeiture process. *See* 21 U.S.C. § 853(n) (as incorporated by 28 U.S.C. § 2461(c)); Fed. R. Crim. P. 32.2(c).

**B. Forfeiture Authority**

Said has been convicted of Wire Fraud and Wire Fraud Conspiracy in violation of 18 U.S.C. §§ 371 and 1343. As a consequence, 18 U.S.C. § 981(a)(1)(C) mandates forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."[1]

Proceeds of a wire fraud scheme include all gross receipts of the scheme. *See, e.g., United States v. Simmons,* 154 F.3d 765, 770-772 (8th Cir. 1998) (interpreting similar forfeiture authority for RICO violation, holding, "the better view is the one that defines proceeds as the gross receipts of the illegal activities); *United States v. Huber*, 404 F.3d 1047, 1058 (8th Cir. 2005) (defendant was not entitled to offset expenses, "even if the expenses were legitimately incurred by Huber, they would not reduce the amount subject to forfeiture"); *United States v. Hively*, 437 F.3d 752, 763 (8th Cir. 2006) (same);

---

[1] Pursuant to 18 U.S.C. § 1956(c)(7)(A), the term "specified unlawful activity" includes any act or activity constituting an offense listed in section 1961(1). The offenses listed in section 1961(1) include wire fraud. Although 18 U.S.C. § 981(a)(1)(C) is a civil forfeiture provision, 28 U.S.C. § 2461(c) authorizes criminal forfeiture when a defendant is convicted of an offense for which civil forfeiture is authorized, as it has done here. ECF No. 1, Forfeiture Allegations. *See, e.g., United States v. Jennings*, 487 F.3d 564, 583-84 (8th Cir. 2007) (affirming money judgment forfeiture based on mail fraud conviction pursuant to 18 U.S.C. 981(a)(1)(C) and 28 U.S.C. § 2461(c)); *Adetiloye*, 716 F.3d at 1041.

*United States v. Lo*, 839 F.3d 777, 792-94 (9th Cir. 2016) (all funds from defendant's fraud scheme were subject to forfeiture on conviction for mail and wire fraud, rather than only the amounts specified in counts of conviction).

Said has also been convicted of Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956 and multiple counts of 18 U.S.C. § 1957 Money Laundering. As a result, the Court "shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1).

## II.   DIRECTLY FORFEITABLE PROPERTY SEIZED FROM SAID IS SUBJECT TO FORFEITURE

The following property is subject to forfeiture because it constitutes or is derived from proceeds of the wire fraud conspiracy and scheme and because it was also involved in money laundering or is traceable to such property:

   a. $309,882.51 seized from Bell Bank account no. 6521112638 held in the name of Cosmopolitan Business Solutions d/b/a Safari Restaurant;
   b. $196,744.11 seized from Wells Fargo Bank account no. 3665380451 held in the name of Salim Limited LLC;
   c. $5,050.20 seized from Wells Fargo Bank account no. 6338840173 held in the name of Salim Limited LLC;
   d. $973.03 seized from Wells Fargo Bank account no. 6817825661 held in the name of Salim Said;
   e. $1,231.07 seized from Bell Bank account no. 6521110434 held in the name of ASA Limited LLC;
   f. The real property located at 2722 and 2742 Park Avenue South, Minneapolis, Minnesota;
   g. The real property located at 5150 Alvarado Ln., Plymouth, Minnesota;
   h. The real property located at 2435 Stelzer Road, Columbus, Ohio;
   i. 2021 Chevrolet Silverado, VIN: 1GC4YUEY4MF160143;
   j. 2021 Mercedes Benz GLA, VIN: 4JGFF5KE1MA421736;
   k. Miscellaneous Electronic Equipment seized from 2722 Park Avenue South, Minneapolis, Minnesota;

l.  Miscellaneous Jewelry, Clothing, and Accessories seized from 5150 Alvarado Ln, Plymouth, Minnesota, as described in the Exhibit U.

The factual basis for the forfeiture of each of these items of property is set forth in detail in the accompanying Declaration of FBI Forensic Accountant Pauline Roase. As is explained in that Declaration, the assets above are subject to forfeiture as directly forfeitable assets. More specifically, each of those assets is the proceeds of, or is traceable to proceeds of, the wire fraud scheme and conspiracy for which Said was convicted. All assets are traceable to FCNP funds, and there is no other likely source from which Said would have acquired them. Because those assets are proceeds of, or are traceable to proceeds of, the wire fraud scheme and conspiracy, they are all subject to forfeiture.

The assets described above are also subject to forfeiture because they were involved in money laundering or are traceable to assets involved in money laundering. As was shown at trial and in the Roase Declaration, Said orchestrated a massive conspiracy to launder proceeds of the food program fraud scheme. More than $44 million was processed through Cosmopolitan Solutions bank accounts, and those accounts were central to the money laundering conspiracy. All Cosmopolitan Solutions accounts were used to launder fraud proceeds, between Cosmopolitan Solutions entities and owners, and also with co-conspirators and their entities.

The Roase Declaration sets forth more specifically how each bank account was involved in the money laundering conspiracy and how the funds seized from the accounts were traceable to such tainted funds. The real estate, vehicles, and

miscellaneous properties are similarly involved in or are traceable to property involved in the money laundering conspiracy, as was described at trial and set forth in the Roase Declaration. Given the massive amount of funds Said laundered, it follows that nearly everything he acquired during the conspiracy would be traceable to it.

Finally, the jury's guilty verdict on the five Counts alleging violations of 18 U.S.C. § 1957 requires the court to find that all property involved in those violations, including all property purchased through those violations, is subject to forfeiture. 18 U.S.C. § 982(a)(1); *United States v. Hawkey,* 148 F.3d 920, 927-28 (8th Cir. 1998) (affirming forfeiture of motorhome that was traceable to a § 1957 violation, no credit was due to defendant for the value of subsequent improvements); *United States v. Beltramea*, 849 F.3d 753, 759-60 (8th Cir. 2017) (affirming forfeiture of real property that was involved in, and used to facilitate, the money laundering violation).

This is consistent with evidence presented throughout trial in this case, which established that Said generated and laundered many millions of dollars of proceeds of the food program fraud scheme and spent millions of dollars of the proceeds of that scheme on himself, in the form of real estate, vehicles, and bank accounts.

### III. A MONEY JUDGMENT FORFEITURE OF $7,837,656.60 SHOULD BE ENTERED AGAINST SALIM SAID.

#### A. Personal Money Judgments Forfeitures are Authorized in Criminal Actions.

Entry of a personal money judgment forfeiture is specifically authorized by Fed. R. Civ. P. 32.2(b)(1), and such orders have been repeatedly upheld. *See, e.g., United States v. Johnson*, 956 F.3d 510, 518 n.5 (8th Cir. 2020) (affirming $2.1 million money

9

judgment forfeiture, with defendant receiving credit against that total for the value of forfeited assets); *Peithman*, 917 F.3d at 652 (affirming money judgment forfeiture imposed under 18 U.S.C. § 981(a)(1)(C), while remanding for a redetermination of the amount of the money judgment issued under 21 U.S.C. § 853), cert. denied, 140 S. Ct. 340 (2019); *United States v. Gregoire,* 638 F.3d 962, 971-72 (8th Cir. 2011) (money judgment forfeiture permitted based on mail fraud conviction; no jury determination required for amount of money judgment forfeiture); *Jennings*, 487 F.3d at 586 (affirming money judgment for amount of proceeds defendant derived from "honest services" mail fraud scheme).

"[T]he law does not demand mathematical exactitude in calculating the proceeds subject to forfeiture. . . Rather, district courts may use general points of reference as a starting point for a forfeiture calculation and make reasonable extrapolations supported by a preponderance of the evidence." *Peithman,* 917 F.3d at 651 (quoting *United States v. Prather,* 456 F.App'x 622, 626 (8th Cir. 2012)).

**B. The United States is Entitled to a $7,837,656.60 Money Judgment Forfeiture Against Said Pursuant to 18 U.S.C. § 981(a)(1)(C) and § 982(a)(1).**

Said's wire fraud and money laundering convictions involved a massive fraud scheme through which the defendants collectively obtained tens of millions of dollars of illicit fraud proceeds.[2] Evidence introduced at trial included bank account records and schedules for Said and the various entities he owned, controlled and used to

---

[2] The United States is basing its requested money judgment forfeiture on only the Wire Fraud Conspiracy, Wire Fraud Counts, and the Money Laundering Conspiracy Counts (Counts 1, 2, 5, 8, 12, and 41).

launder funds. In support of this motion, FA Roase created Exhibits W through CC to her Declaration, which are a series of spreadsheets setting forth the amount of fraud proceeds Said obtained, directly and indirectly, through in the fraud scheme.

As Exhibit W shows, Said obtained at least $7,837,656.60 through the fraud scheme, and more than that amount was involved in his money laundering conspiracy. This sum includes the following categories of proceeds Said obtained: (1) one-third of the net deposits into Cosmopolitan Solutions bank accounts, excluding funds that were transferred to other defendants, entities controlled by those defendants, and funds directly spent on personal or real property for the defendants (that spending is accounted for separately), totaling $1,521,220.23; (2) net deposits into Salim Limited LLC bank accounts, totaling $5,324,973.13; (3) one-third of the net deposits into ASA Limited bank accounts, totaling $617,511.81; (4) deposits to Salim Said's personal bank accounts, totaling $112,613.00; (5) deposits into Anisa Chekchekani's personal bank accounts, totaling $219,500.00; (6) and Salim Said's credit card expenses paid by Calikamin Enterprise LLC, totaling $41,838.43.

The basis for each of these categories of proceeds is set forth in detail in the Roase Declaration. These sums are also consistent with trial testimony, which showed that Said was a leader of the fraud and money laundering conspiracies. It is also consistent with evidence showing that he funneled fraud proceeds through a variety of entities and co-conspirators, and that he purchased property for himself through his corporate entities. Despite the large total, the sums above are a relatively conservative estimate of the fraud proceeds that Said obtained through the food program fraud

scheme. For example, this calculation subtracts payments to co-conspirators from the total and it divides net fraud proceeds received by Cosmopolitan Solutions and ASA Limited LLC between their three owners.

The Conspiracy to Commit Money Laundering provides a separate justification for a money judgement in at least that amount. In a money laundering conspiracy, all funds and assets that are involved in the conspiracy are subject to forfeiture. *Hively*, 437 F.3d at 763. Here that would include all funds that moved through Said and Cosmopolitan Solutions's accounts because those accounts were involved in the money laundering conspiracy. As is shown in Exhibit W, more than $7.8 million was laundered through bank accounts controlled in whole or in part by Said. As a result, the money laundering conspiracy conviction provides additional, independent support for a money judgment forfeiture of at least $7,837,656.60 against Said.

### IV. A GENERAL ORDER OF FORFEITURE SHOULD BE ENTERED AGAINST SAID.

The United States also requests that a general order of forfeiture be entered against Said pursuant to Fed. R. Crim. P. 32.2(b)(2)(C). A general order of forfeiture, which is expressly authorized by the Federal Rules of Criminal Procedure, allows the government to seek the forfeiture of directly forfeitable property identified after the date of sentencing:

> **(C) General Order.** If, before sentencing, the court cannot identify all the specific property subject to forfeiture or calculate the amount of the money judgment, the court may enter a forfeiture order that:
>
>   (i)   lists any identified property;

>    (ii)   describes other property in general terms;
>
>    (iii)  states that the order will be amended under Rule 32.2(e)(1) when additional specific property is identified or the amount of the money judgment has been calculated.

Fed. R. Crim. P. 32.2(b)(2)(C).

The government requests that the preliminary order of forfeiture include a general order of forfeiture as provided for in Fed. R. Crim. P. 32.2(b)(2)(C). Entry of a general order of forfeiture will allow the government to pursue directly forfeitable assets if any are identified after sentencing. Preserving the government's right to seek the direct forfeiture of assets based on evidence that such assets are traceable to the fraud scheme would allow the government to clear title to such assets and seek to recover proceeds that have been transferred to third parties. *See* 21 U.S.C. § 853(c) (codifying the relation-back doctrine). A general order of forfeiture will provide an important tool in addition to the money judgment forfeiture requested above.

## V.   THE GOVERNMENT IS ENTITLED TO DISCOVERY TO LOCATE ASSETS SUBJECT TO FORFEITURE.

The United States also requests entry of an order pursuant to Fed. R. Crim. P. 32.2(b)(3) authorizing it to conduct discovery for the purpose of identifying and locating additional assets subject to forfeiture, including as a result of the General Order of Forfeiture, or assets of Said that may be substituted up to the value of the money judgment forfeiture. Rule 32.2(b)(3) authorizes the government, upon the entry of a preliminary order of forfeiture, to "conduct any discovery the court considers proper in identifying, locating, or disposing of the property" that has been forfeited to

the United States. Such discovery may include the taking of depositions of witnesses. *See* 21 U.S.C. § 853(m); *United States v. Saccoccia*, 898 F. Supp. 53 (D.R.I. 1995) (government can take depositions for the purpose of locating assets controlled by the defendant that are subject to forfeiture). In addition, the reference in Rule 32.2(b)(3) to "any discovery the court considers proper" necessarily permits the court to authorize discovery under the Federal Rules of Civil Procedure. Such discovery includes but is not limited to the authority to issue a request for documents to a party under Rule 34 and to a non-party under Rules 34(c) and 45.

The United States also requests that the Court retain jurisdiction over this action pursuant to Rule 32.2(e) to forfeit any subsequently discovered directly forfeitable or substitute property, and to dispose of any third-party claims to such assets.

### III. CONCLUSION

For the foregoing reasons, the United States moves this Court for a Preliminary Order of Forfeiture.

Respectfully submitted,

Dated: 2/12/2026

DANIEL N. ROSEN
United States Attorney

*s/Craig Baune*
BY: CRAIG R. BAUNE
Assistant U.S. Attorney
Attorney ID No. 331727
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone: 612-664-5600
Craig.baune@usdoj.gov