Docusign Envelope ID: C3B028AE-8B2D-8914-8397-A4C1E7BF4B74

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

AIMEE MARIE BOCK, et al.,

        Defendants.

Court File No. 22-cr-223 (NEB/DTS)

**FEEDING OUR FUTURE'S THIRD-PARTY PETITION UNDER 21 U.S.C. § 853(n)**

---

## **INTRODUCTION**

Petitioner, Feeding Our Future (hereinafter "FOF"), respectfully submits this petition pursuant to 21 U.S.C. § 853(n) seeking the exclusion of the $3,506,066.80 seized from Bank of America business checking account No. 37400463156, which was opened and held in the name of account owner Feeding Our Future DBA Teaching Our Future (hereinafter the "BoA Account") in whole or in part, from the criminal forfeiture order against Aimee Marie Bock (hereinafter the "Defendant"). FOF was not charged as a criminal defendant by the United States Government, is not a party to the underlying criminal case, and asserts a legally recognized interest in the funds seized from the BoA Account independent of the Defendant.

As detailed herein, FOF is entitled to relief for three principal reasons. First, FOF holds a superior legal interest in the funds held in the BoA Account that takes precedence over any forfeiture claim. Second, FOF is an innocent third party and a victim of the Defendant's unlawful conduct. Third, any attempt to treat the funds held in the BoA Account as forfeitable based on an alter ego theory is unsupported by the evidence and legally improper.

1

This petition is filed pursuant to 21 U.S.C. § 853(n), which provides the exclusive mechanism for third parties to adjudicate ownership interests in property subject to criminal forfeiture. FOF timely files this petition within the statutory 30-day period following notice of the forfeiture proceedings and seeks a determination that it holds a superior legal interest in the Bank of America account (hereinafter the "BoA Account") under § 853(n)(6)(A), requiring exclusion of that property from forfeiture.

## JURISDICTION AND STATUTORY FRAMEWORK

This Court has jurisdiction over this ancillary proceeding under 21 U.S.C. § 853(n). Section 853(n) governs the adjudication of third-party claims to forfeited property and provides the sole procedure by which a non-defendant may assert a legal interest in such property. A petition must be filed within thirty (30) days of receipt of notice of the forfeiture order, and FOF's petition is timely filed.

Under § 853(n)(6)(A), the Court shall amend the forfeiture order if the petitioner establishes by a preponderance of the evidence that it held a legal interest in the property superior to that of the defendant at the time of the acts giving rise to forfeiture. As set forth below, FOF satisfies this standard and is entitled to exclusion of the $3,506,066.80 seized from the BoA Account in forfeiture.

## STATEMENT OF FACTS

### I.   FOF'S ORGANIZATION AND LEGITIMATE OPERATIONS

FOF is a Minnesota nonprofit corporation and separate legal entity that legitimately operated pursuant to its charitable purpose between November 2016 and at least April 2020. Exhibit 1. FOF has no owners and is governed by its Board of Directors in accordance with Minnesota Statutes Chapter 317A. The organization maintained its own financial accounts and

records, including a bank account with Azlo (hereinafter the "Azlo Account"), which was opened in September 2018. Exhibit 2-3. The Azlo Account was opened and held in FOF's name, funded by legitimate sources, and used to support FOF's operations and programming. Exhibit 4. As a Minnesota nonprofit corporation, these funds were collected and held by FOF for a charitable purpose, and such funds thus constituted a charitable trust stewarded by FOF's Board of Directors as trustees. *See* Minn. Stat. § 501B.35, Subd. 2-4.

Defendant was an employee and agent of FOF, serving for a time as FOF's paid Executive Director. Although Defendant is also the founder of the organization, FOF is a separate legal entity with all the powers and rights afforded to it by Minn. Stat. § 317A.161, and neither Defendant's founding role or employment confers to her ownership or entitlement to the organization's assets. Furthermore, Defendant's authority was limited to acting on behalf of FOF in furtherance of organizational purposes and subject to Board oversight. Any actions outside that authority were not approved by FOF's Board of Directors.

Shortly before Defendant began engaging in unauthorized and fraudulent conduct, the total funds in FOF's Azlo Account totaled $46,060.90. Exhibit 5. In or about October 2020, the BoA Account was opened in FOF's name. Exhibit 6. Thereafter, it appears funds were transferred from FOF's Azlo Account to its BoA Account, including transfers totaling approximately $60,000. Exhibits 6 and 7. As previously noted, these funds originated from FOF's Azlo Account, which was funded, at least in part, by legitimate sources and used for organizational purposes. Accordingly, at least a portion of the funds deposited into the BoA Account can be directly traced to legitimate funds belonging to FOF.

During this period, FOF continued to use the Azlo Account for ordinary business operations, including payroll and vendor payments, while transitioning banking activity to the BoA

3

Account. Exhibits 7 and 8. The Azlo Account balance declined over time and was reduced to $0 by March 31, 2021. Exhibit 8.

The Indictment alleges that Defendant began engaging in criminal conduct in or about April 2020. To be clear, at no time did FOF's Board of Directors authorize or approve Defendant to engage in any fraudulent or unlawful conduct. FOF did not knowingly contribute to, participate in, or benefit from the conduct underlying the forfeiture allegations, and it had no knowledge of the Defendant's actions prior to their discovery. Upon discovery of the misconduct, FOF terminated Defendant's employment and took steps to mitigate further harm. Exhibit 9. FOF has not been compensated for its losses by the Defendant or any other source, and FOF has no alternative means of recovery, as the funds seized from the BoA Account represent the organization's primary and only remaining asset.

On or about February 23, 2022, FOF's Board of Directors voted to begin the voluntary dissolution process pursuant to Minn. Stat. § 317A.721. Exhibit 10. FOF is currently in the process of voluntary supervised dissolution (see Court File No. 19HA-CV-22-657; Exhibit 11) and requires funds to satisfy outstanding liabilities, including administrative expenses, legitimate third-party vendor obligations, costs of collateral litigation (see Court File No. 62-CV-23-863; Exhibit 12), and other costs necessary to complete an orderly wind-down in accordance with Minn. Stat. §§ 317A.741 to 317A.765. With one exception as described more fully below, FOF lacks access to operating funds in order to facilitate that dissolution.

On April 24, 2022, FOF submitted a claim to the $3,506,066.80 in funds seized from FOF's BoA Account, amongst other physical property. Exhibit 13.

On July 13, 2022, in Court File No. 19HA-CV-22-657, the Dakota County District Court issued an Order granting FOF's motion for *cy pres* and supervised release of $72,351.03 in funds

raised through a GoFundMe campaign. Exhibit 14. In the Order, the Court made important judicial findings relevant to FOF's current petition, including:

1.) ¶ 24: "In order to carry out the terns of the Court's April 11, 2022 Order for Supervised Voluntary Dissolution, Feeding Our Future will require financial resources, which it will not have access without a Court order for cy pres and supervised release of funds. The Court finds that the expenses necessary to carry out the Court's Order are administrative overhead expenses."

2.) ¶ 25: "The dissolution process involves…, satisfying the costs of dissolution (including attorney fees and disbursements), and paying legitimate claims of vendors and creditors. Here, there exists a large number of innocent third parties who engaged in arms-length transactions with Feeding Our Future. To the extent possible, those vendors and creditors should be allowed to make claims and be paid."

The Court ordered $72,351.03 to be held in Legal for Good's trust account (as counsel for FOF) and "administered only after notice to the [Minnesota Attorney General's Office] and pursuant to this Court's direction and spent only after specific court authorization in accordance with Minn. Stat. § 317A.735, subd. 1." *Id.* The United States Department of Justice was notified of the proceedings and given a copy of the Order.

To date, the Dakota County District Court has authorized $64,002.42 to be distributed for dissolution purposes in accordance with Minn. Stat. § 317A.735, subd. 1, on the following dates: 1.) $32,089.98 per Order issued on November 29, 2022, 2.) $9,278.45 per Order issued on February 6, 2023, and 3.) $22,633.99 per Order issued on July 22, 2024. Exhibit 15. A sum of $9,021.41 remains in Legal for Good's trust account for FOF. Aside from these funds, FOF has no other access to money to satisfy its financial responsibilities.

In conjunction with the dissolution process, legal counsel has reviewed FOF's obligations and has identified appropriately $133,786 in legitimate dissolution claims that must be satisfied. Exhibit 16. Dissolution claims totaling approximately $2.5 million were denied as invalid or not

owed by FOF. Id. Additionally, Legal for Good's work in progress related to FOF's dissolution process is approximately $24,500, spanning the period from April 19, 2024 to present. Exhibit 17.

On December 30, 2025, the Honorable Nancy E. Brasel issued a Preliminary Order for Forfeiture in Court File Number 22-CR-223 (1) (NEB/DTS) forfeiting the funds from FOF's BoA Account. FOF received notice of the Order on March 18, 2026. Exhibit 18.

## ARGUMENT

I.    **FOF HAS A SUPERIOR LEGAL INTEREST IN THE BOA ACCOUNT AND THE FUNDS HELD THEREIN UNDER 21 U.S.C. § 853(n)(6)(A).**

Under 21 U.S.C. § 853(n), "[a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may…petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). The term "legal interest in the property" encompasses "all legally protected rights, claims, titles, or shares in real or personal property." *United States v. Reckmeyer,* 836 F.2d 200, 205 (4th Cir. 1987).

A. *Minnesota Law Confirms FOF's Ownership of the BoA Account*

The law's requirement that a third-party claimant in forfeiture proceedings have a legal interest imposes a statutory-standing requirement on claimants. Thus, "a party seeking to challenge the government's forfeiture of money or property used in violation of federal law must first demonstrate [a legal] interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture." *United States v. Three Hundred Sixty-Four Thousand Nine Hundred Sixty Dollars ($364,960.00) in U.S. Currency,* 661 F.2d 319, 326 (5th Cir. 1981); *United States v. One 1945 Douglas C-54 (DC-4) Aircraft,* 604 F.2d 27 (8th Cir. 1979). Because a legal interest is required to bring a claim under 21 U.S.C. § 853(n)(2), a court must first look to the law of the jurisdiction

that created the property right to determine whether the claimant has a valid interest. *United States v. Bearden,* 328 F.3d 1011, 1013 (8th Cir. 2003).

Under Minnesota law, a nonprofit corporation is a distinct legal entity that owns its own property, including its bank accounts. Minn. Stat. § 317A.161, Subd. 4 ("A corporation may buy, lease, acquire, own, hold, improve, use, and deal in and with, real or personal property, or an interest in property, wherever located"). Additionally, the "business and affairs" of a nonprofit corporation are managed by or under the direction of its board of directors. Minn. Stat. § 317A.201 ("The business and affairs of a [nonprofit] corporation must be managed by or under the direction of a board of directors.").

Minnesota case law and statutes consistently recognize that a bank account constitutes a contractual relationship between the depositor and the financial institution. *See e.g.,* Minn. Stat. § 524.6-201, subd. 2; Minn. Stat. § 336.4-104(a)(1); *In re Guardianship of Setterberg*, 2001 Minn. App. LEXIS 65 (2001); *Lerbakken v. Twin City Federal Sav. & Loan Ass'n.,* 230 N.W.2d 596 (Minn. 1975). Accordingly, as the named account holder and depositor, FOF holds the exclusive legal authority to control and direct disposition of funds deposited into the BoA Account. This statutory framework confirms that control over nonprofit assets, including bank accounts, rests with the corporate entity acting through its board of directors.

To the extent the Defendant had access to, or temporary authority over, the BoA Account, such authority does not confer to her any ownership interest. Minnesota law expressly distinguishes between authority to act and beneficial ownership. Where an account includes an agency designation, an authorized agent "has no beneficial right to sums on deposit." Minn. Stat. § 524.6-203(c). Thus, even if the Defendant had signatory authority or exercised control over the BoA Account, such access is legally insufficient to establish ownership. The funds remain the

property of FOF as the account holder. Accordingly, Minnesota law confirms FOF's ownership of the BoA Account.

B. *FOF Has a Superior Interest in the Funds Contained in the BoA Account Pursuant to 21 U.S.C. § 853(n)(6).*

If a court determines the claimant in forfeiture proceedings has an interest in the property under the law of the jurisdiction that created the property right, then at the ancillary hearing, the court must next look to federal law to determine if the claimant will prevail in the ancillary proceeding. There are two grounds on which to prevail at an ancillary hearing. The claimant must either demonstrate 1.) priority of ownership at the time of the offense under § 853(n)(6)(A), or 2.) that he subsequently acquired the property as a bona fide purchaser for value under § 853(n)(6)(B). *United States v. Watkins,* 320 F3d 1279, 1282 (11th Cir. 2003) (citing 21 U.S.C. §§ 853(n)(6)(A) & (B)).

Section 853(n)(6)(A) – the first ground related to priority of ownership – applies here and embodies the relation-back doctrine. Under the relation-back doctrine, title to the forfeited property vests in the United States at the time of the defendant's criminal act. Nevertheless, a third party who had a legal interest in the forfeited property before the underlying crime was committed can prevail in the ancillary proceeding on the ground that they had an interest in the property before the government's interest vested. *United States v. Nava,* 404 F.3d 1119, 1129 (9th Cir. 2005).

FOF satisfies the requirements of 21 U.S.C. § 853(n)(6)(A) because it held a legal interest in the funds contained within the BoA Account, which were collected by FOF prior to the Defendant's criminal conduct and therefore prior to the vesting of any interest in the United States.

As noted above, the record establishes that FOF's ownership interest in the funds predates the Defendant's alleged criminal conduct. The Azlo Account, which was opened in September 2018, was held in FOF's name, funded by legitimate sources, and used to support FOF's operations

8

and programming. As a Minnesota nonprofit corporation, these funds were collected and held by FOF for a charitable purpose, and such funds thus constituted a charitable trust stewarded by FOF's Board of Directors as trustees. *See* Minn. Stat. § 501B.35, Subd. 2-4. To the extent funds in the BoA Account are traceable to the Azlo Account, those funds originated from FOF and include amounts that indisputably predate the alleged criminal conduct. As of January 1, 2020 – prior to the onset of Defendant's criminal activity – the account held $46,060.90. The Indictment alleges that the Defendant's criminal conduct began in or about April 2020. In October 2020, the BoA Account was opened in FOF's name. Thereafter, it appears funds were transferred from FOF's Azlo Account to the BoA Account, including transfers totaling approximately $60,000. These funds originated from FOF's Azlo Account, which was funded, at least in part, by legitimate sources and used for organizational purposes. Accordingly, at a minimum, FOF's ownership of the Azlo Account and its funds as of January 1, 2020 establishes a superior legal interest in those funds under § 853(n)(6)(A).

Moreover, FOF continued to use the Azlo Account for ordinary operational expenses, including payroll, while apparently transitioning all its banking activities to the BoA Account. The balance of the Azlo Account gradually declined, and by March 31, 2021, the account had been reduced to a balance of $0. Accordingly, at least a portion of the funds in the BoA Account can be directly traced to legitimate funds belonging to FOF and FOF's legal interest is superior to that of the Defendant and is not extinguished by the relation-back doctrine.

C.  *At a Minimum, FOF is Entitled to Exclusion of Funds Traceable to Its Pre-Offense Property; Commingling Does Not Eliminate FOF's Superior Legal Interest.*

Even if the Court determines that some portion of the funds held in the BoA Account may be subject to forfeiture, the Court should, at a minimum, exclude from forfeiture those funds in which FOF has established a superior legal interest. As discussed above, FOF held $46,060.90 in

its Azlo Account prior to the onset of the alleged criminal conduct. To the extent these funds were transferred into the BoA Account, they remain traceable to FOF and retain their character as non-forfeitable property.

Commingling of legitimate and allegedly tainted funds does not automatically render all funds forfeitable. The Eighth Circuit has emphasized that forfeitures are disfavored and must be strictly confined to property traceable to unlawful conduct. *United States v. Premises Known as 7725 Unity Ave. N.*, 294 F.3d 954 (8th Cir. 2002). Where legitimate funds are commingled with allegedly tainted funds, the government retains the burden to establish a sufficient evidentiary nexus showing that forfeitable funds are actually traceable to criminal activity. *United States v. Bornfield,* 145 F.3d 1123, 1135 (10th Cir. 1998). Courts in this District have likewise held that commingling limits, rather than eliminates, the government's forfeiture interest, such that forfeiture is appropriate only to the extent funds are traceable to tainted sources. *United States v. 216 Kenmore Ave.*, 657 F. Supp. 2d 1060 (D. Minn. 2009). These principles confirm that commingling does not extinguish FOF's ownership interest, nor does it relieve the government of its burden to trace forfeitable funds with specificity. At a minimum, FOF is entitled to exclusion of funds traceable to its pre-offense balance of $46,060.90, which indisputably predates the alleged criminal conduct and constitutes FOF property under § 853(n)(6)(A).

To the extent the government contends that tracing is impracticable due to commingling, the appropriate remedy is substitute asset forfeiture under 21 U.S.C. § 853(p), which applies only to property of the Defendant and does not authorize forfeiture of property belonging to a third party.

10

## II.    FOF IS NOT THE DEFENDANT'S ALTER EGO AND ITS SEPARATE LEGAL EXISTENCE MUST BE RESPECTED.

The government may attempt to justify forfeiture of the funds seized from the BoA Account by treating FOF as the Defendant's alter ego. Any such theory is unsupported by the facts presented at trial and legally inapplicable in this ancillary proceeding.

As an initial matter, the inquiry under 21 U.S.C. § 853(n) focuses on whether the petitioner has a legal interest in the property that is superior to the Defendant's interest. The statute does not authorize forfeiture of property owned by a separate legal entity based on generalized allegations of control or association. Accordingly, alter ego or veil-piercing concepts are not a substitute for the required showing that the Defendant held a forfeitable interest in the property.

Even if alter ego principles are considered by this Court, the standard is not met in this case. Under Minnesota law, veil piercing requires a showing that the entity is a mere instrumentality of the individual, such that its separate existence has been disregarded through complete domination of finances, policy, and business practices. *Hoyt Props., Inc. v. Prod. Res. Grp., LLC,* 736 N.W.2d 313, 318 (Minn. 2007); *Victoria Elevator Co. v. Meriden Grain Co.,* 283 N.W.2d 509, 512 (Minn. 1979). This is a demanding standard and is not satisfied by the mere fact that an individual serves as a founder, officer, or employee of the organization.

FOF is, and at all relevant times was, a nonprofit organization with its own governance structure, operations, and financial records. It maintained separate bank accounts in its own name and was governed by a board of directors. FOF is a separate legal entity with all the powers and rights afforded to it by Minn. Stat. § 317A.161, and neither Defendant's founding role or employment confers to her ownership or entitlement to the organization's assets. While the Defendant served for a time as the paid Executive Director of FOF, her authority to act on behalf of the organization did not confer upon her any ownership interest in FOF's assets. To the contrary,

11

as described above, Minnesota law distinguishes between authority to act and beneficial ownership, and an agent's access to or control over organizational accounts does not establish a personal property interest in those funds.

Rather than acting in furtherance of FOF's interests, the Defendant engaged in unauthorized and fraudulent conduct without the knowledge or approval of FOF's Board of Directors. Upon discovery of this conduct, FOF promptly terminated the Defendant and took steps to mitigate further harm. These facts further underscore that the Defendant was acting outside the scope of her authority and adverse to the organization's interests.

There is no evidence that FOF was operated entirely as a sham entity or that its separate existence was disregarded. Nor is there evidence that FOF was subject to the type of complete domination required to pierce the corporate veil. At most, the record reflects that the Defendant abused her position within a nonprofit organization—conduct that does not transform FOF into her alter ego.

Permitting forfeiture on an alter ego theory under these circumstances would improperly collapse the distinction between a nonprofit entity and an individual employee, exposing innocent organizations to forfeiture based solely on the misconduct of a rogue actor. Such a result is inconsistent with both the statutory framework of § 853(n) and fundamental principles of corporate separateness.

Accordingly, the Court should reject any alter ego theory and recognize FOF's separate legal existence and its ownership of the account.

## III.     FORFEITURE WOULD IMPROPERLY PENALIZE FOF

The purpose of 21 U.S.C. § 853(n) is to protect the rights of innocent third parties who hold legitimate interests in property subject to criminal forfeiture. Congress enacted the ancillary

proceeding mechanism to ensure that forfeiture does not unjustly deprive non-culpable parties of their property interests. 21 U.S.C. § 853, § 32.2.2 Comment and History of Rule.

FOF, and its legitimate vendors and creditors, is precisely the type of third party § 853(n) is designed to protect. FOF is an independent nonprofit organization with a legitimate mission, separate legal existence, and no involvement in the Defendant's alleged criminal conduct. FOF is not a wrongdoer in the underlying offense; rather, it is a victim of the Defendant's unauthorized and fraudulent actions.

FOF did not knowingly participate in, benefit from, or facilitate the conduct giving rise to the forfeiture. To the contrary, once the misconduct was discovered, FOF's Board of Directors promptly terminated the Defendant and took steps to mitigate further harm. Despite this, FOF has been left without access to its operating funds and is unable to meet its financial obligations or complete an orderly dissolution. Forfeiture of FOF's property would therefore compound, rather than remedy, the harm caused by the Defendant's conduct. It would effectively shift the consequences of the Defendant's wrongdoing onto a nonprofit organization, contrary to the remedial purpose of the statute. Accordingly, § 853(n) requires recognition and protection of FOF's superior legal interest in the account and precludes forfeiture of property belonging to a non-culpable third party.

## IV.    THE GOVERNMENT'S ATTEMPT TO CREDIT THE FUNDS HELD WITHIN THE BOA ACCOUNT AGAINST THE DEFENDANT'S MONEY JUDGMENT IMPROPERLY COLLAPSES THE DISTINCTION BETWEEN THE DEFENDANT AND FOF.

Because the Defendant did not own or have a beneficial interest in the BoA Account or its funds, it is improper to include FOF's $3,506,066.80 as part of a money judgment forfeiture against Defendant. A forfeiture money judgment represents the value of proceeds that the defendant personally obtained from the offense. *United States v. Casey,* 444 F.3d 1071 (2006); *United States*

13

*v. Newman,* 659 F.3d 1235 (2011); *United States v. Tolliver,* 730 F.3d 1216 (2013). It is a personal in personam judgment against the defendant and does not operate as a mechanism to reach or satisfy third-party property interests.

Here, however, the government seeks to forfeit funds from FOF's bank account—property owned by a separate legal entity—and simultaneously apply its value toward satisfaction of the Defendant's personal forfeiture money judgment. This approach improperly collapses the distinction between the Defendant and FOF. The government cannot use property owned by a non-party to satisfy a defendant's money judgment. To permit such a result would effectively require an innocent third party to bear the financial consequences of the Defendant's alleged criminal conduct, contrary to the statutory structure of criminal forfeiture and the protections afforded to third parties under 21 U.S.C. § 853(n).

Moreover, the government's position necessarily presupposes that FOF's assets are functionally indistinguishable from the Defendant's personal assets. By crediting the value of the funds seized from FOF's BoA Account against the Defendant's forfeiture obligation, the government is treating organizational property as if it were owned by the Defendant, notwithstanding the absence of any finding of alter ego, veil piercing, or personal ownership. As set forth above, FOF is a separate legal entity with its own governance, accounts, and operations, and the Defendant held no ownership interest in its assets. For these reasons, the government's attempt to apply the funds seized from the BoA Account toward the Defendant's personal forfeiture in not proper under the circumstances.

14

**CONCLUSION**

For the foregoing reasons, Petitioner Feeding Our Future respectfully requests that this Court:

1. Amend the Preliminary Order for Forfeiture to exclude the $3,506,066.80 seized from Bank of America account No. 374004673156, held in the name of Feeding Our Future DBA Teaching Our Future on the grounds that it is the property of Petitioner and not the Defendant;

2. In the alternative, order that the Court exclude from forfeiture at least $46,060.90 – representing funds traceable to Petitioner's pre-offense property – or such greater amount as the evidence establishes; and

3. Grant such other and further relief as the Court deems just and equitable.

Respectfully submitted,

**LEGAL FOR GOOD PLLC**

Dated: <u>April 16, 2026</u>

By: _____
Jennifer L. Urban, Esq. (0390708)
5353 Gamble Dr., Suite 320
St. Louis Park, MN 55416
Telephone:  612-284-6441
Facsimile:  612-284-6421
jenn@legalforgood.com

*ATTORNEY FOR FEEDING OUR FUTURE*

**VERIFICATION**

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 16, 2026.

Signed by:

By: _____
Ali Egal, Feeding Our Future Board President

15