UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-223 (1) (NEB/DTS)

UNITED STATES OF AMERICA,

Plaintiff,

v.

AIMEE MARIE BOCK,

Defendant.

**GOVERNMENT'S MOTION TO MODIFY THE PROTECTIVE ORDER GOVERNING DISCOVERY AND FOR SANCTIONS**

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Matthew C. Murphy and Rebecca E. Kline, Assistant U.S. Attorneys, respectfully moves the Court to modify the Court's November 15, 2022, Protective Order Governing Discovery as it relates to defendant Aimee Bock. (ECF #130.) Because Bock has repeatedly engaged in conduct that violates the Protective Order and aims to subvert the judicial process, the government also requests that the Court sanction her by prohibiting her and any third parties acting on her behalf from accessing or possessing materials governed by the Protective Order outside the presence of her criminal defense attorney, and by prohibiting contact between Bock and her sons until after sentencing.

## I.  BACKGROUND

Aimee Bock was indicted along with 13 co-conspirators on September 13, 2022, for her role in a massive fraudulent scheme to obtain and dole out hundreds of millions of dollars in Federal Child Nutrition Program funds through Feeding Our Future. On March 19, 2025, a jury convicted Bock on all counts. To date, 79

1

defendants have been charged in connection with the scheme, and 65 defendants, including Bock, have been convicted following trials or guilty pleas. Unfortunately, numerous defendants have corrupted the judicial process during the pendency of the case, including by electronically recording court proceedings, bribing jurors, and tampering with witnesses. It now appears that Bock is brazenly adding to this corruption by leaking sensitive, protected materials to the media and elected officials ahead of her May 21, 2026, sentencing. In doing so, she seeks to minimize her leadership role in the fraud at Feeding Our Future and lay the blame for her crimes at the feet of uncharged individuals and entities.

In the course of the government's investigation and subsequent prosecutions of fraud against the Federal Child Nutrition Program, it interviewed hundreds of witnesses, including numerous cooperating defendants and uncharged witnesses. Those statements were memorialized in written interview reports. Federal law enforcement officers also obtained millions of pages of documents through grand jury subpoenas and search warrant, many of which contain sensitive financial and personal identification information of defendants and non-defendants alike. Before producing discovery in Bock's case, the government moved for a Protective Order to limit the dissemination of this sensitive information and its use for any purpose outside of the litigation. (ECF #123.)

On November 15, 2022, the Court granted the government's motion and entered a Protective Order Governing Discovery. (ECF #130.) The Protective Order recognized that the investigative materials collected by the government included

2

highly sensitive information and so required that Bock, along with her co-defendants, hold such disclosures "in strict confidentiality," to be used solely for the purposes of her criminal case. (*Id.* ¶ 2.) Bock's use of protected discovery material for any other purpose would be deemed a violation of the Court's Protective Order, subjecting her to sanctions. Following entry of the Protective Order, the government produced terabytes of data to Bock and her counsel pursuant to the Protective Order's terms. The government's productions included hundreds of sensitive witness interview reports.

## II.    BOCK VIOLATED THE PROTECTIVE ORDER

On April 2, 2026, the government learned that a member of the Minnesota State House of Representatives had received two emails from an individual named "Daisy Hill" using a Proton Mail email address, claiming that "Tim Walz, Keith Ellison, and the Minnesota Department of Education intentionally set Feeding Our Future and Aimee Bock up as a scapegoat." The emails attached numerous documents governed by the Protective Order, including entries from Aimee Bock's Feeding Our Future Monday.com account and emails from Aimee Bock's Feeding Our Future email account.

Then, on April 21, 2026, the government learned that a reporter for the Minnesota Star Tribune had contacted a lawyer representing a cooperating witness in the Feeding Our Future case. The reporter stated to the lawyer that they had obtained copies of reports of two of the witnesses' law enforcement interviews and intended to quote extensively from them in an upcoming article about the conduct of certain uncharged individuals. On April 24, 2026, the government learned from

another lawyer that this same reporter had claimed to have over one hundred law enforcement interview reports (specifically, FBI FD-302 reports) that they would be quoting from in their upcoming article. Given the nature of the documents, they could only have come from the government's discovery disclosures, in violation of the Court's Protective Order.

The government subsequently investigated who was responsible for disseminating the protected interview reports to the Star Tribune reporter. Although the government has not been able to ascertain with certainty who provided the interview reports to the Star Tribune, it seems apparent that Bock, or an individual acting on her behalf, is responsible for this corruption of the judicial process. It also is apparent that Bock repeatedly and shamelessly violated the Court's Protective Order by directing her adult son to disseminate protected material from the government's disclosures to elected officials and members of the media.

According to recorded calls from Sherburne County Jail, since at least February 2026, Bock has been directing her college-age son, Camden Bock, to download large volumes of materials related to her federal prosecution from her Dropbox account[1] and send them to elected officials and members of the media. Her purpose for doing so can best be described as a public relations campaign— to seek to minimize her starring role in pilfering the Federal Child Nutrition Program while casting the "real" blame for the rampant fraud on the Walz administration, state administrators, and uncharged individuals.

---

[1] Dropbox is a cloud-based file storage application.

For example, during a recorded jail call on March 16, 2026, Bock instructed Camden on how to navigate her Dropbox account and asked him to download numerous documents that she believed showed that she tried to combat fraud at Feeding Our Future. Significantly, these were the same documents that were later sent to a member of the Minnesota legislature from the "Daisy Hill" Proton Mail account. Bock also dictated to Camden what she said would be the body of the email: "Ellison's office intentionally set Bock/FOF up to be a scapegoat." She told Camden to remove the trial exhibit stickers, and other markings indicating the documents came from her federal criminal case, before emailing them from a newly created Proton Mail account to "all republicans and the media." Bock then told Camden they would send out batches of additional documents every few days for the next week or two. On March 27, 2026, Bock told Camden to send the files to "Republicans in DC," especially the "guy who told Ellison he should be in jail" and the "right wing people that [President] Trump follows."

On March 28, 2026, Bock directed Camden to "create a folder of stuff that we're gonna send out" and a folder "of the stuff that's been sent." That way, she explained, they could easily resend all the documents to others who might request it. She then asked Camden to log into her Dropbox account to download more files, including her Monday.com notes. She again instructed him to remove any exhibit stickers before sending the materials. In a call later that day with an unidentified female, Bock claimed that she hadn't "snitch[ed] on nobody" during the four years her case was pending, "but we're blowing shit up now. Now we're leaking all kinds of documents."

5

In a recorded call on March 30, 2026, Bock asked Camden whether he got "any of those emails sent?" Camden replied that he had sent "three so far" but because the files are so big he could only send "like one every eight hours." Bock suggested that he try to zip the files before sending. On April 1, 2026, Bock told Camden that they had to "get some more stuff out." Camden replied that he already had sent six emails and that one local television reporter had replied, "thank you."

Bock told Camden that the Star Tribune wanted to interview her. She stated that she didn't want to "talk too much about it because obviously they listen to my phone calls, but there's a shit ton of people who are working together to get this moving in the right direction." Bock ended the call by telling Camden to "send out the next round and then let me know when . . .you're free to download some more of that stuff." Later that same day, Bock told her other son, Cale, that a Star Tribune reporter was writing a "whole story on [an uncharged individual] and why she never got indicted, including all the evidence that exists against her." Two days later, on April 3, 2026, Bock told Cale that Camden had "been sending some stuff out, like to expose the truth." She explained that Camden used a Proton Mail account with a "fake name" so they "wouldn't know it was [] him."

On April 9, 2026, Bock told Camden about an interview she did with the Star Tribune reporter. She said that she answered all the reporter's questions and told him that she had "all the documents to back up every single thing I say." According to Bock, the Star Tribune reporter intended to publish the story after the parties had filed their sentencing position papers, as that would juxtapose how the government

wants [Bock to get] this much time [while] this [other] lady didn't even get charged." Camden voiced concerns that by talking to the media, Bock might get a longer sentence in her federal case. Bock brushed off his concerns, saying, "they want to sentence me to life anyway."

The next day, April 10, 2026, Bock told Camden that she was sending him two new email addresses to which he was to "forward everything you've sent out." Camden replied that yet another reporter had responded to his email and indicated he would "look at everything this weekend."

On April 13, 2026, Bock told Camden that she wanted to "start with the stuff for Star Tribune." She explained that she was going to "have [Camden] download some more stuff then we're going to send it." She again helped Camden navigate to her Dropbox, directed him to a folder entitled "Federal Case," and asked him to email selected documents to the Star Tribune reporter. The next day, Bock informed her son Cale that the Star Tribune reporter had over three hundred of the government's interview reports from its investigation.

In a recorded jail call on April 16, 2026, Camden told Bock he sent her a "to-do-list" of the items the "Star guy" wanted. Camden thought he had found some of the items "on a black media folder," including a document with the evidence sticker B11. Bock responded that they should "knock that out quick" and suggested they "try to do the Star Tribune stuff tonight." Camden started reading through the "to-do list" from the "Star guy" item by item, including requests for an April 2021 email "from [K.J.] to FBI, which originated from [J.R's] personal email account with a voicemail

attachment" and a February 2021 email from C.T. to the Minnesota Department of Education. Bock instructed Camden on how to locate the requested documents within her Dropbox.

Finally, in an April 19, 2026, call with an unidentified female, Bock said that someone had given the Star Tribune reporter "every interview the FBI did with people." She added that her criminal defense attorney, Kenneth Udoibok, and the editor of the Star Tribune were making plans as to when to publish the article to garner the most strategic advantage.

## III.   ARGUMENT

Based on the foregoing, Bock has flagrantly, knowingly, and willfully violated the Court's Protective Order by disseminating protected government discovery materials for purposes other than her federal criminal case. She is using these protected materials solely for the improper purpose of waging a public relations campaign in advance of sentencing, rehashing her failed, self-serving, trial defense that she attempted to combat fraud but was thwarted by state administrators. Sadly, but unsurprisingly, she is using her own son to violate the Court's order and corrupt the legal process.

That she has done so knowingly and willfully is evidenced by her explicit instructions to her son to remove all markings that would identify the leaked documents as originating from her federal court file, and to send them using a Proton Mail account set up under a fake name. She openly admitted that she was aware her conduct could result in additional penalties, but that she simply did not care due to the high sentencing exposure she already faces due to her conviction at trial.

The fact of Bock's sentencing exposure and the Court's pending sentencing determination is no reason to allow her flagrant disregard of the Court's orders to go unsanctioned. Additional defendants in the broader Feeding Our Future fraud scheme, including one co-defendant with whom Bock was indicted, remain pending trial. The government's investigation and prosecutions remain ongoing. Bock's leaking of protected material into the public domain is directly and highly harmful not only to the government's prosecution, but also to the safety of those witnesses who have chosen to come forward and speak to law enforcement. Protective orders are entered to prevent exactly this type of conduct, and Bock should be sanctioned accordingly for her manipulation of the criminal justice process.

Although the government cannot say with absolute certainty whether Bock is the person directly responsible for leaking cooperating witness statements to the Star Tribune, it is clear she was leaking other protected documents to members of the media at the same time the Star Tribune received the reports. It is also clear that Bock believes the Star Tribune reporter is writing an article that will favorably color her role in the fraud—indeed, she claimed her attorney was strategizing with the editor to ensure the article is published when it will be most beneficial to Bock—such that she was highly incentivized to provide the reports. Moreover, the nature of the Star Tribune's planned story, focusing on uncharged individuals, would be more favorable to Bock than any other charged defendant, given her particular role in the fraud.

9

Regrettably, this is not the first instance of defendants in this fraud scheme engaging in obstructive conduct designed to subvert the judicial process. In each instance, the government has detected the subversive conduct and sought sanctions of varied measures from the Court. In each instance, the Court has expressed zero tolerance for the conduct and sanctioned the offending defendant accordingly. The Court should do the same here. Because Bock is apparently undeterred by the fact that she is still pending sentencing, the Court should significantly curb her ongoing access to the government's discovery materials.

The government therefore respectfully requests that the Court modify its November 15, 2022, Protective Order to enjoin Bock, her sons, or any other third parties acting on her behalf, other than her criminal defense attorney, from possessing or having access to any of the protected materials, outside of the presence of her criminal defense attorney. The government requests that the modified order require Bock to (a) relinquish control of and access to her Dropbox account, either by deleting the account or removing her access to it, and (b) surrender to the United States all physical and electronic copies of protected material in her possession, custody, or control. This should include, but not be limited to, her son Camden's computer. Finally, the government suggests that Bock's sanctions include an order prohibiting her from any form of contact with her sons, Cale and Camden Bock, in advance of sentencing, given the lengths to which she has utilized them to engage in her manipulative conduct. The Court has exercised its right to sanction prior instances of egregious defense conduct in this case and should do so again here.

10

## IV.   CONCLUSION

For the reasons set forth above, the government moves the Court to modify the Protective Order and to sanction Aimee Bock for her violations of the Protective Order.


Date: April 28, 2026                                Respectfully submitted,

                                                    DANIEL N. ROSEN
                                                    United States Attorney


                                          BY:  /s/ *Matthew C. Murphy*
                                               MATTHEW C. MURPHY
                                               REBECCA E. KLINE
                                               Assistant U.S. Attorneys