UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-223 (NEB/DTS)

UNITED STATES OF AMERICA,

. Plaintiff,

v.

14. ABDIRAHMAN MOHAMUD AHMED,
also known as "Chef Abcos,"

Defendant.

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

The United States of America and the defendant, Abdirahman Mohamud Ahmed, agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges.** The defendant agrees to plead guilty to Count 57 of the Indictment, which charges the defendant with money laundering, in violation of Title 18, United States Code, Section 1957. The defendant fully understands the nature and elements of the crimes with which he has been charged. Upon imposition of sentence, the United States agrees to move to dismiss the remaining charges against the defendant contained in the Indictment.

2.    **Factual Basis.** The defendant is pleading guilty because he is in fact guilty of Count 57 of the Indictment. In pleading guilty, the defendant admits the

1

following facts, and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

The Food and Nutrition Service, an agency of the United States Department of Agriculture (USDA), funds the Federal Child Nutrition Program, a program designed to provide free meals to children in need. The Minnesota Department of Education (MDE) administers the Federal Child Nutrition Program in Minnesota.

Meals funded by the Federal Child Nutrition Program in Minnesota are served at "sites." Each site participating in the Federal Child Nutrition Program must be sponsored by an organization that is authorized to participate in the Federal Child Nutrition Program. Sponsors submit reimbursement claims to MDE on behalf of sites under their sponsorship. The USDA provides federal reimbursement funds to MDE on a per-meal basis. MDE provides the federal funds to the sponsoring agency, which in turn pays the reimbursement funds to the sites under its sponsorship.

From in or about April 2020 through in or about January 2022, defendant Abdirahman Mohamud Ahmed's business partners and co-defendants participated in a scheme to defraud the Federal Child Nutrition Program. As part of the scheme, Mr. Ahmed's business partners enrolled the Minneapolis-based restaurant they co-owned with Mr. Ahmed, Safari Restaurant, in the Federal Child Nutrition Program under the sponsorship of Feeding Our Future. Immediately upon enrolling Safari Restaurant in the Federal Child Nutrition Program through Feeding Our Future, Mr. Ahmed's business partners and co-defendants began submitting fraudulent meal reimbursement claims alleging to be serving meals at Safari Restaurant to thousands

2

of children every day, 7 days a week. For the 12-month period from April 2020 to April 2021, Mr. Ahmed's business partners and co-defendants claimed to serve 3,900,235 meals to children, for which Safari Restaurant was reimbursed $12,123,357 in Federal Child Nutrition Program funds. The number of meals allegedly served to children at Safari Restaurant was grossly inflated and only a small fraction of Federal Child Nutrition Program funds Safari Restaurant received was used to purchase food.

Because Mr. Ahmed was living in Ohio at the time, he did not directly or personally participate in preparing or submitting fraudulent meal reimbursement claims. He nonetheless believed there was a high probability that his business partners and co-defendants were submitting fraudulent meal reimbursement claims and deliberately was blind to what would otherwise have been obvious to him. This included that Safari Restaurant could not have legitimately made the level of profit that it did from the Federal Child Nutrition Program. Mr. Ahmed deliberately did not inquire of his business partners and co-defendants about the source and legitimacy of the profits, nor did he contact authorities and express his concerns. He instead simply kept his share of the profits, which totaled over $2.4 million.

Mr. Ahmed used the criminal proceeds he received from Safari Restaurant to engage in monetary transactions by, through, or to a financial institution, affecting interstate commerce, and involving more than $10,000, including the transaction alleged in Count 57 of the Indictment. That is, on or about August 30, 2021, Mr. Ahmed and his business partners and co-defendants Salim Said and Abdulkadir

3

Salah paid approximately $2.4 million towards the purchase of a commercial building located at 2345 Seltzer Road, in Columbus, Ohio—such property having been derived from specified unlawful activities, namely, wire fraud, in violation of Title 18, United States Code, Section 1343.

3.    **Waiver of Pretrial Motions**. The defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of the plea agreement, and based upon concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4.    **Waiver of Constitutional Trial Rights**. The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The

4

defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5.    **Additional Consequences**. The defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6.    **Statutory Penalties**. The parties agree that money laundering, as charged in Count 57 of the Indictment, carries statutory penalties of:

    a.    a maximum of 10 years in prison;

    b.    a supervised release term of up to 3 years;

    c.    a fine of up to $250,000, or twice the amount of the criminally derived property involved in the transaction;

    d.    restitution as agreed to by the parties in this agreement; and

    e.    a mandatory special assessment of $100.

7.    **Revocation of Supervised Release**. The defendant understands that if he were to violate any supervised release condition while on supervised release, the Court could revoke his supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that he be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

8.    <u>Guidelines Calculations</u>. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

a.    <u>Base Offense Level</u>. The parties agree that the base offense level for money laundering is **24** because the amount laundered was more than $1,500,000 but less than $3,500,000. U.S.S.G. § 2S1.1(a)(2) and 2B1.1(b)(1)(H).

b.    <u>Specific Offense Characteristics</u>. The parties agree that the offense level should be increased by **1 level** because the defendant's charge of conviction is 18 U.S.C. § 1957. U.S.S.G. § 2S1.1(b)(2)(A).

c.    <u>Chapter 3 Adjustments</u>. The parties agree that the defendant's offense level should be reduced 4 levels, pursuant to U.S.S.G. § 3B1.2(a), because he was a minimal participant in any criminal activity. The parties otherwise agree that, other than credit for acceptance of responsibility, no Chapter 3 adjustments apply.

d.    <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this

agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered..

e.  Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence that should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.  Zero-Point Offender Adjustment. Assuming the defendant has zero criminal-history points and no disqualifying conduct, the parties agree the defendant qualifies for a 2-level adjustment under U.S.S.G. § 4C1.1.

g.  Guidelines Range. If the adjusted offense level is 16 and the criminal history category is I, the Sentencing Guidelines range is 21 to 27 months of imprisonment.

h.  Fine Range. If the adjusted offense level is 16, the Sentencing Guidelines fine range is $10,000 to $95,000. U.S.S.G. § 5E1.2(c)(3).

9.  Discretion of the Court. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal-history category. The Court

7

may also depart from the applicable Guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10.   **Agreements as to Sentencing Recommendation**. At the time of sentencing, the government agrees to recommend that the defendant receive a non-custodial sentence. The parties reserve the right to make motions for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

11.   **Special Assessment**. The Sentencing Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. The defendant agrees that the special assessment is due and payable at the time of sentencing.

12.   **Restitution Agreement**. The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crime. The defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named

8

in the Indictment. The defendant agrees that he owes restitution in the amount of $2,434,389, jointly and severally with all other co-defendants in the Indictment.

13.    **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the Defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. The Defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14.    **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1957, and any property traceable to such property, as charged in Count 57 of the Indictment. The property subject to forfeiture includes, but is not limited to, the

real property located at 2435 Stelzer Road, Columbus, Ohio, or any proceeds traceable to the sale of that property.

The parties acknowledge that the United States has completed the administrative forfeiture of $456,965.90 in funds from account number xxxxxx6863 held in the name of Abdirahman Ahmed at Fifth Third Bank, Cincinnati, Ohio. The defendant also agrees that the 2018 Lexus RX 350, VIN 2T2BZMCA1JC153144, is subject to forfeiture. He agrees that vehicle may be forfeited through civil judicial or non-judicial (administrative) forfeiture proceedings, and he agrees to complete a waiver of timely notice form, abandonment, or any such other document as may be required to effect the administrative forfeiture of that vehicle. Defendant specifically waives any right to receive notice of the forfeiture of the vehicle under 18 U.S.C. § 983 or to otherwise contest, directly or indirectly, its forfeiture.

The United States reserves the right to seek a money judgment forfeiture, forfeiture of directly forfeitable assets, and forfeiture of substitute assets.

The defendant waives all statutory and constitutional defenses to the forfeiture of the assets described above and waives any right to contest or challenge (including direct appeal, habeas corpus, or any other means) such forfeiture, directly or through any company he owns or controls, on any grounds. To the extent the defendant has sought remission or otherwise challenged the forfeiture of the above-described property, the defendant withdraws any such challenges

15.    **Waivers of Appeal and Collateral Attack.** The parties hereby waive the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is

not limited to: the issue of the defendant's guilt or innocence, any issues relating to the negotiation, taking or acceptance of the guilty plea, the sentence imposed or any issues that relate to the calculation of the Guidelines range, the supervised-release term and conditions imposed, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above the top of the Guidelines range, and an appeal by the government of the substantive reasonableness of a term of imprisonment below the bottom of the Guidelines range.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

11

16.   **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§.552, 552A.

17.   **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

Dated:   5-14-2026

DANIEL N. ROSEN
United States Attorney

BY:
REBECCA E. KLINE
MATTHEW C. MURPHY
Assistant United States Attorneys

12

Dated: 5/14/2026

ABDIRAHMAN MOHAMUD AHMED
Defendant

Dated: May 14, 2026

★ DANE DEKREY
BRUCE RINGSTROM
Counsel for Mr. Ahmed

13