UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-223(13) (NEB)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AHMED ABDULLAHI GHEDI,<br><br>Defendant. | **GOVERNMENT'S POSITION REGARDING SENTENCING** |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Rebecca E. Kline and Matthew C. Murphy, Assistant United States Attorneys, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 57 months in prison.

Defendant Ahmed Abdullahi Ghedi, along with his co-conspirators, operated a Federal Child Nutrition Program meal site, sponsored by Feeding Our Future, through a shell company he created called ASA Limited LLC. In September 2020, the defendant's co-conspirator registered ASA Limited LLC with the Minnesota Secretary of State. Four days later, the co-conspirator applied for ASA Limited to operate a purported food site in the Federal Children Nutrition Program under the sponsorship of Feeding Our Future at the Gurey Deli, a small market located in a strip mall in St. Paul. The defendant submitted his application together with Aimee Bock, Feeding Our Future's executive director. Within just three weeks of creating

the ASA Limited site, the defendant and his co-conspirators claimed to be serving meals to 2,000 or 3,000 children each day, seven days a week.

During the one-year period from September 2020 to September 2021, the defendant and his co-conspirators claimed to have served more than 1.6 million meals at the ASA Limited site. In support of these claims, the defendant and his co-conspirators prepared and submitted numerous fraudulent meal counts and invoices.

The defendant also paid approximately $5,000 in kickbacks from ASA Limited LLC to Abdikerm Eidleh, the Feeding Our Future employee who served as the site support manager for the ASA Limited site. ASA Limited, of which the defendant was a co-owner, paid Eidleh an additional $49,000. These payments were made to entities controlled by Eidleh, in order to disguise the nature of the kickback payments and to make them appear legitimate. Feeding Our Future received more than $400,000 in administrative fees for sponsoring the ASA Limited site's fraudulent participation in the program.

Rather than use fraudulently obtained money to serve meals or feed children, the defendant and his conspirators fraudulently misappropriated much of it. In December 2020, the defendant created AG Limited LLC. The defendant used AG Limited as a shell company to hide and disguise the source and ownership of his portion of the fraud proceeds. Between December 2020 and November 2021, the defendant deposited more than $2 million in Federal Child Nutrition Program funds into AG Limited LLC bank accounts. The defendant used this money to purchase more than $245,000 in motor vehicles and to fund more than $200,000 in credit card

spending. The defendant also transferred approximately $560,000 in Federal Child Nutrition Program funds to Cosmopolitan Business Properties LLC—a shell he co-owned with other co-conspirators—toward the purchase of a mansion and adjoining property located at 2722 and 2742 Park Avenue South in Minneapolis.

Ultimately, based on fraudulent claims throughout the conspiracy, the defendant and his co-conspirators caused a loss of approximately $7.2 million to the Federal Child Nutrition Program reimbursements for meals purportedly served to children.

Ghedi was charged by indictment on September 13, 2022, with conspiracy to commit wire fraud (Count 1), wire fraud (Counts 2, 5, and 12), conspiracy to commit federal programs bribery (Count 15), federal programs bribery (Count 23), conspiracy to commit money laundering (Count 41), and money laundering (Counts 43, 46, 53, and 56). Ghedi pleaded guilty to wire fraud (Count 12) and money laundering (Count 43) on March 24, 2025.

## **SENTENCING RECOMMENDATION**

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology. 552 U.S. 38, 49–50 (2007). The district court should first calculate the advisory Sentencing Guidelines range. *Id*. at 49. After calculating a defendant's advisory Sentencing Guidelines range and hearing from the parties, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based on the facts in arriving at an appropriate sentence. *Id*. at 49–50; *see also United States v. Ruvalcava-Perez*, 561

F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

**A. Sentencing Guidelines Range**

The government agrees with the Guidelines calculations contemplated in the PSR. The base offense level for Count 12 is 7. PSR ¶ 104. The offense level is increased by 18 levels because the loss was between $3.5 million and $9.5 million. PSR ¶ 105. The offense level is also increased by 2 levels because the offense involved fraud in connection with major disaster or emergency benefits. PSR ¶ 107.

The PSR did not apply a downward adjustment for a mitigating role, finding that Ghedi was an average participant in the fraud. PSR ¶¶ 96, 109. The government agrees with the PSR's findings on this issue. As noted in the Addendum, Ghedi had an equal share in the ASA Limited fraud proceeds, paid kickbacks to Abdikerm Eidleh, and himself created shell companies to hide and launder the proceeds of the fraud. PSR p. A.2-3. None of these factors merit a role reduction.

The base offense level for Count 43 is 27. PSR ¶ 112. The offense level for Count 43 is increased by 1 level because the defendant was convicted under 18 U.S.C. § 1957. PSR ¶ 113. Counts 12 and 43 group for guideline calculation purposes, resulting in the total adjusted offense level being 28. PSR ¶ 118. The total adjusted offense level is decreased by 3 levels pursuant to Guidelines § 3E1.1(a) and (b) because the defendant accepted responsibility in a timely manner. PSR ¶¶ 120-121.

Although the plea agreement contemplated that the defendant would be entitled to a 2-level reduction for being a zero point offender, the PSR determined that Ghedi falls into Criminal History Category II due to his prior convictions. PSR ¶¶ 119, 126-131.

With a total adjusted offense level of 25, and Criminal History Category II, the defendant's advisory Guidelines range is 63-78 months in prison. PSR ¶ 167. With a total adjusted offense level of 25, and Criminal History Category II, the defendant's Guidelines fine range is $20,000 to $200,000. PSR ¶ 181.

**B. Section 3553(a) Sentencing Factors**

Section 3553(a) requires the Court to analyze several factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

**1. Nature and Circumstances of the Offense**

Ghedi participated in one of the largest fraud schemes in the history of the District of Minnesota, and the single largest Covid-19 fraud scheme in the country. He took money intended to feed children who no longer could get regular, nutritious meals at school, and used it to enhance his lifestyle. He knew she was not entitled to the money and that it was obtained by lying to the government about the number of children he allegedly served meals to. Simply put, he took advantage of a once-in-a-century global pandemic and the generosity of American taxpayers to enrich himself.

**2. History and Characteristics of the Defendant**

Ghedi was born in the United States in 1990. His parents emigrated to the United States from Somalia prior to the civil war. Ghedi and his family moved to Minnesota when he was 10 years old. He had several short-term jobs after high school and began working at Safari Restaurant in 2017. He is not married and has no children.

Ghedi reported that he suffers from Type 2 diabetes, hypertension, and anxiety. He has not been employed since the instant offense. He resides in an apartment in Plymouth, Minnesota.

**3. Deterrence, Respect for the Law, Just Punishment, and Protecting the Public**

The Court must also consider the need for the sentence to afford adequate deterrence, promote respect for the law, provide just punishment, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a).

Ghedi's crime must be viewed in context of the rampant fraud that has plagued Minnesota in recent years. Unprecedented levels of fraud perpetrated on public benefits programs in Minnesota have eroded trust in the government and raised questions about the sustainability of those programs. Too many people, Ghedi included, participate in this kind of fraud because, as they see it, everyone else is doing it. This cynical view must be stopped. It has undermined and endangered important government programs as well as legitimate nonprofit organizations that rely on donations to carry out actual charitable work.

On the other hand, Ghedi's conduct appears to be a significantly more serious crime than his prior offenses. He ultimately accepted responsibility for his conduct. His behavior, as well as his age, is indicative of someone who is unlikely to recidivate.

**4. The Need to Avoid Unwanted Disparities**

Finally, the Court must consider the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a). As noted in the PSR, 95 percent of defendants sentenced within the past four years under the same Guidelines provision, with the same offense level and criminal history as Ghedi, received a sentence of imprisonment. Those who were imprisoned received an average sentence of 53 months. The amount of money Ghedi received through fraud falls in the in the middle of the applicable loss bracket contained in § 2B1.1. However, given the egregious nature of the offense conduct, including, specifically, Ghedi's efforts to exploit a national crisis to enrich himself, an above average sentence is warranted.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the Court impose a sentence of 57 months in prison.

Respectfully Submitted,

Dated: August 12, 2026

DANIEL N. ROSEN
United States Attorney

/s/ *Rebecca E. Kline*
BY: REBECCA E. KLINE
MATTHEW C. MURPHY
Assistant U.S. Attorneys