UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-223(5) (NEB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AHMED SHARIF OMAR-HASHIM,<br><br>Defendant. | ) | **GOVERNMENT'S POSITION REGARDING SENTENCING** |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Rebecca E. Kline and Matthew C. Murphy, Assistant United States Attorneys, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 41 months in prison.

Defendant Ahmed Sharif Omar-Hashim, along with his co-conspirators, created and operated a Federal Child Nutrition Program meal site, sponsored by Feeding Our Future, called Olive Management. The defendant opened up the Olive Management site in September 2020. The Olive Management site fraudulently claimed to have served meals to 3,000 children a day, seven days a week, at a small storefront deli located in a strip mall in St. Cloud. During the 12-month period from September 2020 to September 2021, the defendant and his co-conspirators fraudulently claimed to have served more than 1.6 million meals to children at the Olive Management site, including through a fictitious "after school program." In

support of these claims, the defendant prepared and submitted fraudulent meal count sheets and invoices.

In support of their fraudulent claims, the conspirators also submitted a fake attendance roster purporting to list the names of 2,040 children who attended the Olive Management site's "after-school program." The roster was fraudulent. Of the approximately 2,040 names on the list, only approximately 20 matched the names of children attending school in the St. Cloud Public School District.

Based on these fraudulent claims, between September 2020 and September 2021, the defendant and his co-conspirators received approximately $7,490,711 in Federal Child Nutrition Programs reimbursements for meals purportedly served to children at the Olive Management site.

The defendant sent much of this money to his co-conspirators via shell companies created and used to receive and launder the proceeds of the fraud scheme. The defendant also paid approximately $45,000 in kickbacks from Olive Management to co-defendant Abdikerm Eidleh, the Feeding Our Future employee who served as the site support manager for the Olive Management site. Feeding Our Future also received approximately $400,000 in administrative fees for sponsoring Olive Management's fraudulent participation in the program. Omar-Hashim also used Olive Management's bank accounts to launder fraud proceeds. He used the funds towards the purchase of a residential property in Minneapolis and a Lexus vehicle.

Omar-Hashim was charged by indictment on September 13, 2022, with conspiracy to commit wire fraud (Count 1), wire fraud (Counts 5 and 11), conspiracy

to commit federal programs bribery (Count 15), federal programs bribery (Counts 25, 33, 35, and 39), conspiracy to commit money laundering (Count 41), and money laundering (Counts 47, 54, and 58). Omar-Hashim pleaded guilty to wire fraud (Count 11) on December 13, 2023.

**SENTENCING RECOMMENDATION**

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology. 552 U.S. 38, 49–50 (2007). The district court should first calculate the advisory Sentencing Guidelines range. *Id.* at 49. After calculating a defendant's advisory Sentencing Guidelines range and hearing from the parties, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based on the facts in arriving at an appropriate sentence. *Id.* at 49–50; *see also United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

**A. Sentencing Guidelines Range**

The base offense level for wire fraud as charged in Count 11 is 7. PSR ¶ 103. The offense level is increased by 18 levels because the loss was between $3.5 million and $9.5 million. PSR ¶ 104. The PSR contemplates that the offense level is also increased by 2 levels because the offense involved fraud in connection with major disaster or emergency benefits. PSR ¶ 106. As explained in its objections to the PSR,

although the government does not dispute the factual application of this enhancement, it will be asking the Court to sentence Omar-Hashim as contemplated in the plea agreement.

The total adjusted offense level is decreased by 3 levels pursuant to Guidelines § 3E1.1(a) and (b) because the defendant accepted responsibility in a timely manner. PSR ¶¶ 112-113. Finally, the defendant is entitled to a 2-level reduction because he meets the zero-point offender criteria set forth in Guidelines § 4C1.1(a). PSR ¶ 111. The defendant falls into Criminal History Category I.

With a total adjusted offense level of 20 and Criminal History Category I (as contemplated by the plea agreement), the defendant's advisory Guidelines range is 33-41 months in prison. With a total adjusted offense level of 22 and Criminal History Category I (as contemplated in the PSR), the defendant's advisory Guidelines range is 41-51 months in prison. PSR ¶ 173. The defendant's Guidelines fine range is $15,000 to $150,000. PSR ¶ 173.

**B. Section 3553(a) Sentencing Factors**

Section 3553(a) requires the Court to analyze several factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

**1. Nature and Circumstances of the Offense**

Omar-Hashim participated in one of the largest fraud schemes in the history of the District of Minnesota, and the single largest Covid-19 fraud scheme in the country. He took money intended to feed children who no longer could get regular, nutritious meals at school, and used it to enhance his lifestyle. He knew he was not entitled to the money and that it was obtained by lying to the government about the number of children he allegedly served meals to. Simply put, he took advantage of a once-in-a-century global pandemic and the generosity of American taxpayers to enrich himself.

**2. History and Characteristics of the Defendant**

Omar-Hashim was born in Somalia in 1983 as the fourth of six children. His family was displaced to a refugee camp in Kenya in 1992. After 5 years there, Omar-Hashim and his family relocated to the United States. Omar-Hashim graduated from high school in Minneapolis. The PSR indicates that between 2000 and 2012, he held two long-term positions in hospital medical records management and state financial auditor roles, and he simultaneously attained associate's, bachelor's, and master's degrees in business management. Omar-Hashim has nine children, four of whom live in Kenya. He resides in Minneapolis with his wife and five minor children. The PSR also reflects his lengthy history of employment in various industries. He currently works as a marketing contractor.

**3. Deterrence, Respect for the Law, Just Punishment, and Protecting the Public**

The Court must also consider the need for the sentence to afford adequate deterrence, promote respect for the law, provide just punishment, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a).

Omar-Hashim's crime must be viewed in context of the rampant fraud that has plagued Minnesota in recent years. Unprecedented levels of fraud perpetrated on public benefits programs in Minnesota have eroded trust in the government and raised questions about the sustainability of those programs. Too many people, Omar-Hashim included, participate in this kind of fraud because, as they see it, everyone else is doing it. This cynical view must be stopped. It has undermined and endangered important government programs as well as legitimate nonprofit organizations that rely on donations to carry out actual charitable work.

On the other hand, Omar-Hashim's conduct appears to be an aberration in an otherwise law-abiding life. He has no criminal history points and accepted responsibility for his conduct before any of his co-defendants. He also took steps to inform the government of additional property interests that he held (of which the government was unaware), which would be subject to forfeiture after pleading guilty. His behavior, as well as his age, is indicative of someone who is unlikely to recidivate.

**4. The Need to Avoid Unwanted Disparities**

Finally, the Court must consider the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a). As noted in the PSR, 96 percent of defendants sentenced within the past four years under the same Guidelines provision, with the same offense level and criminal history as Omar-Hashim, received a sentence of imprisonment. Those who

were imprisoned received an average sentence of 33 months. The amount of money Omar-Hashim received through fraud falls on the higher end of the applicable loss bracket contained in § 2B1.1. Given the egregious nature of the offense conduct, including, specifically, Omar-Hashim's efforts to exploit a national crisis to enrich himself, an above average sentence is warranted.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the Court impose a sentence of 41 months in prison.

Respectfully Submitted,

Dated: August 14, 2026

DANIEL N. ROSEN
United States Attorney

/s/ *Rebecca E. Kline*
BY: REBECCA E. KLINE
MATTHEW C. MURPHY
Assistant U.S. Attorneys